THE ALABAMA GOLD LIFE INSURANCE COMPANY *vs.* GAR—
MANY.

1. Although notices issued by a life insurance company required the premiums to be paid at 12 o'clock M. on the day they fell due, yet where there was no such stipulation in the policy itself, and according to the course of all previous dealings between it and the assured, a literal compliance with this requirement had not been exacted, if the right to do so existed at all, it was waived, and the company could not insist on a strict and literal compliance without notifying the assured, before the day of payment, of an intention to do so.

(*a*.) A breach of the contract by the company, not concurred in or assented to by the assured, gave him the right to sue and recover any damages he may have sustained in consequence thereof, unless he was not the owner of the contract at the time of the breach.

(*b*.) Although the assured may have assigned his policy in writing as collateral security for a debt, and notice thereof may have been given to the company, yet if, prior to the breach of contract, the debt had been paid and the policy returned to the assured, the title vested in him by operation of law, although there was no re-assignment in writing.

2. Where a policy of life insurance provided for the payment of premiums annually, and gave the assured the right to continue the insurance, if, after the policy had been continued for several years, the company improperly refused to receive further premiums or to continue the insurance, on a suit brought therefor by the assured, the measure of his damages was the amount of premiums paid, with interest on each from the time such payment was made.

(*a*.) This was not a suit brought to rescind the contract by the assured, but an action for a wrongful refusal, on the part of the company, to permit him to continue it, and therefore the rule that a rescission must be total and not partial, and that the parties to it must be put in *statu quo*, does not apply.

(*b*.) If an abatement of damages was proper on account of the intermediate benefits received by the assured, no proof of their value was introduced.

(*c*.) If the company violates the conditions and stipulations of its contract, it is liable to return to the assured at least as much as he would lose by his voluntary failure to keep on foot his policy by paying according to its terms.

(*d*.) A party to an entire contract who has partly performed it and subsequently abandons the further performance according to its stipulations, voluntarily and without fault on the part of the other

party or his consent thereto, can recover nothing for such part performance.

(e.) Where premiums were, by the terms of the policy, payable in gold, but several of the payments were made, by arrangement between the parties, in currency, which was then of less value than gold, and was reduced to a gold valuation, but which has has since become of par value with gold, in a suit by the assured against the company for a refusal to continue his assurance, it was error to charge that "if the payments were made in currency with the premium on gold added, when the gold was above par, he can recover the amount actually paid in currency, including said premium."

(f.) Directions given that the several amounts of excess paid for premiums by the plaintiff in depreciated currency, and which he was allowed to recover, together with interest on each from the date when paid, be ascertained from the data set forth in this opinion, and be deducted from the judgment rendered in his behalf; and that he pay the cost of this writ of error; and that the judgment, when so reduced, be affirmed.

January 6, 1885.

Insurance. Contracts. Damages. Policy. Collateral Security. Title. Assignment. Gold. Currency. Practice in Supreme Court. Before Judge Adams Chatham Superior Court. June Term, 1884.

The defendant in error, Garmany, was insured by the Alabama Gold Life Insurance Company, under a policy, which made the premiums payable on August 27th of each year, without specifying any particular hour. Garmany had paid the premiums on that day, at any hour of the day, indifferently, and the payments were so always received by the company, without regard to hours For some years after the issuance of the policy, the company had a local agent in the city of Savannah, in this state, but removed all its agencies out of the state about 1879.

In May, 1880, Garmany assigned the policy to W. W. Chisholm to secure a debt, which he subsequently paid, and Chisholm returned the policy. The notices of maturity of policies, which were sent by the company, called upon him to pay by 12 (noon) of the day of maturity.

On the 27th of August, 1881, Garmany, failing to find any one in Savannah authorized to receive the payment, paid the amount to the Western Union Telegraph Company, to be paid in Mobile to the insurance company.

There is some discrepancy in the evidence as to the time when this was done. The manager of the telegraph office swore that he tendered the money in cash, between two and three o'clock in the afternoon of that day, at the office of the insurance company, while the secretary of the company testified that no regular tender was made until August 30, but he was notified at 6.10 P. M. on the 27th that there was money at the office for him. It was refused.

Plaintiff brought suit for the amount of premiums which he had paid. Under the charge of the court, he recovered a verdict for $1,247.13, principal, with interest. Defendant moved for a new trial, which was refused, and it excepted.

The other facts are stated in the decision.

JOHN M. GUERARD, for plaintiff in error, cited on measure of damages, 5 East., 449; Chitty Con., 691, 815; 7 Ins. L. Jour., 244; Cowper, 666; Park Ins., 579; May Ins., 711; Bliss Ins., 750; 100 Mass., 251; 89 Ind., 258; 93 U. S., 24; 1 C. L. Jour., 76, (S. C., 5 Bigelow Life and Accident R., 212); 72 N. Y., 125–6.

CHAS. N. WEST, for defendant, cited Code, §3458; 3 Otto, 24; 28 Mo., 383; 61 Penn. (11 P. F. Smith), 107; —C. L. Jour., 792; 51 How. Pr., 1; 13 Johns., 359; 1 Harris & Gill, 258; 36 N. Y., 221; 5 Johns., 82.

HALL, Justice.

Had the plaintiff in the suit the right to maintain it, and if he had that right, was the proper measure of damages awarded him by the verdict of the jury? These are the questions made by the record, and their determination will dispose of the case.

1. The suit was brought upon an alleged breach of the conditions of a policy of insurance, to recover from the company the amount of the premiums paid by the assured, with interest thereon, because the company had wrongfully refused to receive one of the premiums, when tendered after 12 o'clock M. of the day on which it fell due, and thus discontinued the insurance, when it should have continued it. The plaintiff below contended that, although the notices sent out by the company had required the premiums to be paid at 12 o'clock M. on the day they fell due, yet there was no such stipulation in the policy itself, and, according to the course of all previous dealings with them, a literal compliance with this requirement had never been exacted. This position was established by proof, and under the repeated rulings of our courts, as well as the Supreme Court of the United States and those of a number of our sister states, it was well taken   See *Cotton States Life Insurance Co. vs. Lester, guardian,* 62 *Ga.,* 247, which is directly upon the point, and cites a large number of the authorities.

The defendant being estopped by its course of dealings as to this particular matter from refusing the plaintiff's tender of the premium, when it was offered, it is unnecessary to consider other questions made and argued as to its abstract right to insist upon a strict and literal compliance with this requirement; for all the purposes of the case, it is sufficient to hold that, if it had this right, it waived it by its former course of dealing, and, on the occasion in question, failed to notify the plaintiff, before the day, of any change of policy in this respect, or that it intended thereafter to adopt a different rule  and insist on a strict and literal compliance.   A breach of the contract by the defendant, not concurred in or assented to by the plaintiff, gave him the right to institute his suit, and to recover any damages he may have sustained in consequence thereof, unless he was not the owner of the contract at the time of the breach.

It is true that sometime prior to the date we are now considering, the plaintiff had assigned this policy in writing to W. W. Chisholm, and that the insurance company had been duly notified of the assignment. It had been pledged to Chisholm as collateral security for a debt which the plaintiff owed him, and upon the payment of this debt, it was returned to the plaintiff, though it does not appear to have been re-assigned in writing to him. This was done before the breach of the policy complained of. It is, nevertheless, fairly inferable from the evidence that the company was apprised, before and at that time, that Chisholm had ceased to have any beneficial interest in or control over the policy, and that nothing but the apparent naked legal title to it remained in him, while the real title was in the plaintiff, for the trust on which it was held being at an end, and the policy being turned over to the real owner, the title vested in him by operation of law as completely as it would have done by a re-assignment in writing. Code, §2314, and citations. See also *Banks vs. Sloat, Russell & Co.*, 69 *Ga.*, 330, 335. Thus it appears that the plaintiff held the legal title to this policy, as well as the beneficial interest therein, and by reason thereof was fully entitled to maintain the suit.

2. We have now to consider whether the court laid down the correct rule as to the measure of damages in his charge to the jury. There was no error in charging them that "if the plaintiff was entitled to recover, his measure of damages was the amount of premiums paid, with interest on each from the time such payment was made." But these premiums, by the express terms of the policy, being payable in gold, although several of the payments wer made by arrangement between the parties in a depreciated currency, but at its current value in gold, we think there was manifest error in charging that "if the payments were made in currency, with the premium on gold added, when the gold was above par, he can recover the amount actually paid in currency, including said pre-

miums." The plaintiff recovered a judgment, under this charge, which it is optional with him to collect either in "gold or silver coin," the constitutional currency, or in a currency which is now at par with coin, and, so far as concerns the excess beyond the gold coin which he was bound to pay in premiums in order to make it equal to the medium in which he agreed to pay, is included in that judgment, it is clear that he has recovered more than the amount he was bound to pay and did actually pay. Each of the annual premiums called for $146 $\frac{10}{100}$ in gold. On that falling due 27th of August, 1873, he paid 15½ per cent in currency; on that of 1874, he paid 9⅜ per cent; on that due in 1875, 14 per cent; on the premium due in 1876, 11 per cent; on that of 1877, 3 per cent; and on that of 1878, one-half of one per cent. All the subsequent premiums were paid in currency of equal value with gold. This error in the charge and finding, however, if there are no others, will not necessitate another trial of the case; we have all the data necessary to compute the excess found, and which may be deducted, in order to make the finding conform strictly to the legal rights of the party.

It is insisted by the defendant's counsel—plaintiff's in error here—that the amount of the premiums actually paid, with the interest from the date of the respective payments, was not the correct measure of damages, if the plaintiff was under the circumstances, entitled to recover damages at all in the case.

First: He contends that, whether the contract of insurance be regarded as entire for the term of the life of the insured, or as annual only, and renewable according to its provisions, it was certainly executed at the end of each year and dependent for longer existence upon the will of the insured; that in this case it subsisted for eight years, during which time the plaintiff received value for the premiums paid; that he makes no offer to recompense the insurer for the risk it took of his death throughout this period, or for the benefit he received from pledging it on two occasions

at its actual money value as a security for credit extended to him; that he thus received from it intermediate benefits, for which he does not propose to account; that he seeks only a recission of his part of the contract; that if there be a recission at all, it must be total and not partial, and that the parties to it must thereby be put in *statu quo.* This position would, perhaps, be sound, and sustained by the authorities cited, if the plaintiff was, by his action, endeavoring to rescind the contract (Hunt *vs.* Silk, 5 East R., 449; Chitty's Contracts, 691, 815; Tyrie *vs.* Fletcher, Cowper's R., 666, and others cited in the brief of counsel); but the plaintiff was anxious to continue it, and endeavored to comply, as we have seen, with the conditions of the policy entitling him to its continuance, but was not permitted by the defendant to do so; the defendant rescinded the contract over his protest and against his will  The plaintiff could not help himself, and was remitted to his action for redress of wrongs resulting from this breach of the duty which the other party owed him by reason of this very contract.  Apart from this, however, and even admitting that the defendant was entitled to an abatement of damages on account of the "intermediate benefits," which the plaintiff derived from the policy during its existence, there was no evidence in the case showing the value of such benefits, and there was consequently nothing upon which the jury could have based an estimate. The proof to sustain this part of the defence was wholly wanting, and for that, if for no other reason, it was properly disallowed.

The defendant contends, secondly, that the premiums paid, with interest, were not the proper measure of damages, but that it was the equitable value of the policy at the time of the breach, which equitable value was to be ascertained by finding the difference between the cost of a new policy and the present value of the premiums yet to be paid on the repudiated policy when the repudiation occurred, and he cites in support of his position the case of

Statham *vs.* The Insurance Company, 93 U. S., 24, and other cases which follow that line.   We do not at all question the propriety of the rule as applied to the facts of that case.   There both parties were prevented, the one from receiving and the other from paying, in consequence of the existence of war; neither had any control over the causes that occasioned the forfeiture, and neither was in fault for a failure to comply with the terms of the contract. The slightest consideration will distinguish this case from that, and take it out of the rule there laid down.   Had the plaintiff voluntarily made default in the payment of his premiums at the appointed time, he would have forfeited the amount thus paid in, with all the interest that had accrued thereon from the time the payments were respectively made; it was optional with him to do this; the insurer had no right to exercise any such option ; and yet it is gravely insisted that it is not subject to at least as high a penalty, for an arbitrary and unlawful violation of a contract resulting in damages to the assured, as would be the assured himself, for exercising his undoubted right to let his policy lapse by failing or refusing to pay any premium as it falls due; but such is not our view of the law.   We think the company, when it violates the conditions and stipulations of its contract, is liable to return to the assured at least as much as he would lose by his voluntary failure to keep on foot his policy by paying according to its terms. This is the rule as laid down by the courts of some of our sister states, and which, for its manifest equity as well as reciprocity and equality of operation upon the rights of opposing parties commends itself to our regard and sense of justice.   McKee *vs.* Insurance Company, 23 Mo., 383 ; Helme *vs.* Philadelphia Ins. Co., 61 Penn. St. R. (11 P. F. Smith, 107) ; Meade *vs.* St. Louis Mut. Life Ins. Co., 51 Howard's Pr. R., 1.   It rests upon the well established principle that a party to an entire contract, who has partly performed it, and thereupon subsequently abandons its further performance according to its stipulations, volun-

tarily and without fault upon the part of the other party, or his consent thereto, can recover nothing for such part performance. Ketchum and another *vs.* Evertson, 13 Johns. R., 359; Murphey *vs.* Barron, 1 Harris & Gill's R., 258; Husted *vs.* Craig, 36 N. Y. R , 221; Gillett *vs.* Maynard, 5 Johns. R., 82; Meade *vs.* St. Louis Mut. Life Ins. Co., *ut supra.*

We direct and order that the several amounts of excess paid for premiums by the plaintiff in depreciated currency, and which he was allowed to recover, together with interest on each from the date when paid, be ascertained from the data set forth in this opinion, and be deducted from the judgment rendered in his behalf; and that he pay the cost of this writ of error; and that said judgment, when so reduced, be in all other respects affirmed and stand as the judgment which should have been rendered in the case.

Judgment affirmed.