### 24536. PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.* FERGUSON.

DECIDED MAY 3, 1935. REHEARING DENIED JUNE 21, 1935.

*Jones, Johnston, Russell & Sparks, Cumming & Harper,* for plaintiff in error.

*Fred B. Tyler, A. R. Williamson, Ben E. Pierce,* contra.

BROYLES, C. J.   Tom Ferguson sued the Prudential Insurance Company of America for alleged wrongful cancellation of an insurance policy, the petition as amended alleging, in part, that as an employee of the Georgia Railroad he became the owner of certificate No. 1101 of group policy No. 1819, issued by the defendant company on August 1, 1925, for which he paid $2.05 each consecutive month from August 1, 1925, to December 31, 1931, the date of the alleged wrongful cancellation of the policy; that on January 1, 1932, a new certificate, No. 614 of group policy No. G-3690, was issued and delivered to him in lieu of certificate No. 1101; that the second certificate remained in force until May 31, 1932, when he was discharged from the service of the Georgia Railroad because of physical disabilities; that the monthly premium on both certificates was the same, and the policies were substantially the same, except that the first policy provided for total and permanent disability or physical incapacity, while the second policy contained no such disability clause; that prior to the cancellation of certificate No. 1101, and while he was less than sixty years of age, he became totally and permanently disabled or physically incapacitated by reason of described diseases, and is still so permanently disabled and incapacitated, and that said certificate was wrongfully canceled by the defendant; that the defendant did not reserve the right to cancel said certificate No. 1101, either in the certificate, or in group policy No. 1819, or in any other manner, and that there was no mutual agreement or assent for said policy to be canceled; that he was never consulted about a cancellation or advised that the company considered said insurance contract canceled, nor was any request made of him to deliver the certificate for cancellation; that his employer deducted the regular monthly premium from his salary from August 1, 1925, to May 31, 1932, the date of his discharge on account of physical incapacity; that no consideration was offered or paid him to relinquish his valuable rights under certificate No. 1101; that he believed that the premiums deducted from his salary were paid defendant to keep in force certificate No. 1101;

that by reason of his physical incapacity on January 1, 1932, he had valuable vested rights under certificate No. 1101, which was canceled by the defendant; that certificate No. 614, which was issued on January 1, 1932, and which contained no disability provision, was of no value to him in his state of health; that defendant had no authority in law or under the terms of the contract to cancel the original group policy and certificate, and that petitioner suffered damage by reason of said wrongful cancellation. A copy of the group policy and certificate are attached to and made a part of the petition, said policy providing that employees receiving over $100, but not over $175, wages or salary should be insured for $2000, and providing for certain options as to the mode of settlement, including monthly payments. The plaintiff alleged that his average monthly wage was $175, and that he had been damaged by reason of the breach of the contract, in the full and just amount of $85.10 per month from December 31, 1931, to the date of filing suit, and he sued to recover $1872.10.

To the petition as amended the defendant filed a demurrer, a part of which was overruled, and on this ruling the defendant assigns error. The contentions of the demurrer are substantially as follows: That if plaintiff was totally disabled prior to December 31, 1931, the certificate matured prior to that date, and any rights of petitioner to disability benefits thereunder became fixed, and no cancellation or attempted cancellation could be effective, and it could not damage the plaintiff; that the petition did not allege any renewal or attempted renewal for a period subsequent to December 31, 1931, and in the absence of such renewal the policy lapsed by its own terms; that the facts alleged to show wrongful cancellation are as a matter of law insufficient for that purpose; that the failure to pay premiums after December 31, 1931, would have caused the policy to lapse in any event; that the petition does not allege that more than 75 per cent. of the employees of the railroad companies, or more than fifty of such employees, were insured under said policy. In the absence of such number being insured, the policy, by its terms, gave the defendant a right to refuse to renew.

The foregoing statement of facts sufficiently presents the main issues involved, but does not purport to set out all the averments of the petition or demurrer. Where necessary, omitted averments will be referred to in the opinion. In considering the question

whether the plaintiff had a vested right in the policy alleged to have been wrongfully canceled, it must be borne in mind that it was the employee, and not the employer, who was insured. The policy specifically provides that "The *insured* hereunder are the several persons named in the schedule of *employees,*" and provides "for delivery to each person *insured* under this policy an individual certificate setting forth the *insurance protection* to which *each person is entitled* hereunder, and *to whom such insurance is payable*" (italics ours), and vests certain other rights in the employees, such as waiver of premiums, converting the insurance into another form without evidence of insurability, naming the beneficiary, changing the beneficiary, selecting modes of settlement, etc. Moreover, the employee in this case paid for this insurance the sum of $2.05 per month for a period of six years and five months, and necessarily there must have been a consideration for such payments. See *Carruth* v. *Ætna Ins. Co.,* 157 *Ga.* 608 (122 S. E. 226).

The canceled policy provides that "If any person insured under this policy shall become totally and permanently disabled . . at any time after the payment of the first premium on account of such insurance, while this policy is in full force and effect, and the said person is less than sixty years of age, . . the company will, in addition to waiving the premiums, pay to the said person at its home office the amount insured on his (or her) life in twenty-four monthly installments during two years, each installment to be of the amount of $42.55 per $1000 of insurance payable." The plaintiff alleged that his wages would have entitled him to $2000 insurance, that his premiums were paid, that he was less than sixty years of age, and that he was totally and permanently disabled prior to December 31, 1931, the date of the cancellation of the policy. The petition makes no claim for disability benefits as such, but the suit is for damages for a wrongful breach of the contract, and these allegations are material in determining the damages resulting from the breach, as the plaintiff must allege and prove what damage he has sustained by reason of the breach. In other words, the value of the policy to the plaintiff at the time of the cancellation is material in showing the damage he sustained because of the cancellation.

As quoted approvingly in *Farrow* v. *State Mutual Life Insurance Co.,* 22 *Ga. App.* 540 (96 S. E. 446): "The measure of damages

for the wrongful cancellation of a life policy is the value of the policy at the time of its cancellation. . . If a policy of insurance provides that the assured, after the payment of three annual premiums and the surrender of the original policy, may have a paid-up policy for the amount of the premiums actually paid, subject to the unpaid notes given, the measure of damages for a refusal to give a paid-up policy after the performance of the conditions precedent is not the amount of the premiums paid less the notes given, but the actual value of such a policy." Plaintiff alleged that the defendant breached the contract by a wrongful cancellation thereof, that defendant did not reserve the right to cancel the policy and had no agreement or assent to do so, that because of plaintiff's ill health he could not get other disability insurance, and that under the circumstances he was damaged in the amount of the monthly payments due under the contract for total disability. The alleged noncompliance of the company does not relate to a minor provision of the contract, but to the contract as a whole. The petition alleges that the new certificate dated January 1, 1932, provided that "This certificate *supersedes* all former certificates issued to the employee named herein in connection with Group Life Policy G-1819, *which is no longer in force*" (italics ours); and it alleged further that "the cancellation by the defendant of said group policy and certificate was affirmative and positive, both being canceled in toto." This clearly shows a complete repudiation of the original contract, and authorized a suit for its breach.

"Where there is a breach of a contract of insurance by the insurer, as where an insurance company refuses to accept a premium on a life and health insurance policy tendered in accordance with the terms of the contract, and thus *repudiates* the contract, the insured *may recover any damage he has sustained by reason of the breach,* and *ordinarily* his measure of damages is the premiums paid, with interest thereon. *Alabama Gold Life Ins. Co.* v. *Garmany,* 74 *Ga.* 51; *Order of Railway Conductors* v. *Clark,* 159 *Ga.* 390, 392 (125 S. E. 841); *Glover* v. *Bankers Health & Life Ins. Co.,* 30 *Ga. App.* 308 (117 S. E. 665, 48 A. L. R. 111). While, as a general rule, where the action of the insurance company does not amount to a repudiation of the contract of insurance, but amounts merely to a refusal to pay, as required by the policy, sick benefits accruing under its terms, the right of action of the insured

is governed by the policy itself, and he is entitled only to sue for and recover the amount of the benefits thus accruing (29 C. J. 279), still *if the action of the insurance company amounts to a repudiation of the contract itself,* and is accompanied by a declaration to the effect that no future premiums will be received, the insured may treat the contract as breached." (Italics ours.) *Industrial Life & Health Ins. Co.* v. *Thomas,* 43 *Ga. App.* 679 (159 S. E. 885). As stated in the *Garmany* case, above cited, "A breach of the contract by the company, not concurred in or assented to by the assured, gave him the right to sue and recover any damages he may have sustained in consequence thereof, unless he was not the owner of the contract at the time of the breach." The petition in the instant case specifically alleged that the assured did not concur in or assent to the cancellation, and that he was the owner of the contract at the time it was breached. In the *Glover* case, above cited, it was held that "Where the petition of the insured indicates that the benefits [to be] paid to him under the terms of the policy are fixed and determined or capable of definite ascertainment, his recovery should be limited accordingly in fixing the *measure of his damages* on account of the company's *repudiation* of the contract." (Italics ours.) See also Phœnix Mutual Life Ins. Co. *v.* Baker, 85 Ill. 410; Supreme Lodge K. of P. *v.* Neeley (Tex. Civ. App.), 135 S. W. 1046 (9). "After a valid contract of insurance has been effectuated, the right of either party to cancel it at pleasure can accrue only in three ways: 1. By a concurrent agreement with the other party to that effect. 2. By a previous reservation of the right in the policy itself. 3. By statutory provision permitting it." 32 C. J. 1241, § 424.

None of these reasons for cancellation existed in the instant case. "Where a valid contract of insurance has been effectuated, the company can not cancel the policy without the consent of the assured, except where it may be permitted to do so by statute or by reservation in the policy itself. Such a reservation is valid, but, under the general rule, it will be strictly construed against the company." 32 C. J. 1245, § 431. Even where a policy reserves the right of cancellation (and the policy in the instant case did not reserve this right), such right can not be properly exercised merely because of the bad health of the insured, when, on account of such physical condition, he can not obtain other insurance, as alleged in the in-

stant case. *National Life Ins. Co.* v. *Jackson,* 18 *Ga. App.* 494(2) (89 S. E. 633). Group insurance causes the insurer to get more business and enables the insured to get protection at a cheaper rate, but it is not for these reasons any less valid and binding as a contract than ordinary insurance. This being true, the insurance company can not properly cancel the contract at will and issue in lieu thereof for the same consideration another contract wherein a material and vital provision of the original contract beneficial to the insured is eliminated, and such conduct by the company amounts to a repudiation of the original contract and gives the insured a right to sue for the breach. *Ala. &c. Co.* v. *Garmany,* supra; *Order of Conductors* v. *Clark,* supra. The amount recoverable depends upon the actual damage sustained because of the breach. In some instances it might be the premiums paid with interest, while in others, such as total disability, the insured may have sustained a greater damage. In *Supreme Council American Legion of Honor* v. *Jordan,* 117 *Ga.* 808 (45 S. E. 33), the first headnote is as follows: "A certificate issued by a benefit society provided that 'in consideration of the full compliance with all the by-laws' of the society, then existing or thereafter adopted, the society 'agrees to pay' certain named beneficiaries five thousand dollars, upon satisfactory proof of death while in good standing of the person insured. Subsequently to the date of the certificate a by-law was adopted providing that two thousand dollars should be the highest amount paid on any benefit certificate theretofore or thereafter issued. *Held:* (1) That the agreement to pay five thousand dollars was a contract which could not be changed by a by-law so as to reduce the amount agreed to be paid," and that such action of the society "amounted to a repudiation of the contract." In the opinion in that case, Fish, J., speaking for the court, said: "The Supreme Court of Pennsylvania, in referring to an effort made by a benefit society to reduce by a by-law the amount of a certificate theretofore issued, used the following forceful language: 'This was certainly an easy mode of relieving the society from an obligation; and if successful, will doubtless be followed by other similar associations. The difficulty in the way of this convenient mode of paying debts is that it is repudiation pure and simple. The argument that the plaintiff, being a member of the society, is bound by the by-law does not meet the difficulty. It may be a good by-law

as to future cases, but at the time it was passed the plaintiff was something more than a member. He was a creditor whose rights had previously attached, and those rights can not be swept away by such a scheme as this by-law.' . . We are clear that this is not a suit 'arising out of' a benefit certificate. It is not a suit on the contract or to enforce the contract, but a suit founded on a repudiation of the contract, the theory of the action being that the contract has been rescinded."

If the insurer in that case could not repudiate the contract by changing the by-laws and lessening the benefits when the assured's policy stated that the consideration therefor was full compliance with by-laws "existing or thereafter adopted," then, a fortiori, an insurer can not lessen the benefits of an insurance contract containing disability protection, by cancelling the entire contract and issuing another policy without the disability protection, where there is no right of cancellation reserved in the policy or agreement of the assured for this to be done. As quoted in the *Jordan* case, supra, if this were allowed, it would indeed be an easy way for the company to relieve itself of its just obligations.

The ground of demurrer that the petition did not allege any renewal for a period subsequent to December 31, 1931, and that in the absence of such renewal the policy lapsed by its own terms, is without merit. The original policy shows that the three-months-renewal clause contained therein was primarily a provision for computing premiums, the policy providing that during the first term (three months) they should be computed upon a stated basis, and that "at the end of each succeeding term thereafter the company will adjust the premium rates upon which renewals may be effective at the respective ages nearest the birthday attained by the assured." Moreover, the original policy containing the disability clause was dated August 1, 1925, and, therefore, the three-months terms would end on the 1st of November, February, May, and August of each year. The company did not wait for the end of the term to cancel the plaintiff's policy, but canceled it on December 31st, one month before the expiration of the three months term according to the date of the plaintiff's certificate, and issued a new and different policy without the disability clause on January 1, 1932. Furthermore, the policy did not lapse by its own terms at the end of each three months by virtue of the provision therein that

it "may be renewed from time to time for succeeding terms of three months each, upon the payment on or before the date of each renewal of the premiums for the amount of insurance to be renewed." Certain things would authorize the company not to renew the policy at the end of a term, such as nonpayment of premiums, or the number of the insured being less than 75% of the employees eligible for insurance under the contract, or less than 50 of such employees; but unless the insurer is released by some provision of the contract, or agreement of the insured, or provision of law, it is bound by the contract, just as in any other insurance contract. Individual insurance contracts, where the premiums are payable yearly or otherwise, are not renewed at the end of the term. As was said by Chief Justice Fuller, speaking for the court, in McMaster v. N. Y. Life Insurance Co., 183 U. S. 25, 35 (22 Sup. 10, 46 L. ed. 64), "The contracts were not assurances for a single year, with the privilege of renewal from year to year on payment of stipulated premiums, but were entire contracts for life, subject to forfeiture by failure to perform the condition subsequent of payment as provided." See also *Masonic Relief Asso.* v. *Hicks,* 47 *Ga. App.* 499 (171 S. E. 215).

The instant petition alleged that all the premiums had been paid when the original policy was canceled on December 31st, but even if they had not been paid at that time, the thirty-one days of grace provided for in the policy would have extended it to February 1st; so under no existing circumstances could the policy be properly canceled for nonpayment of premiums. Moreover, the petition set out ample facts to show that the original policy was repudiated by the company on December 31st, and declared to be "no longer of force," and this relieved the insured of tendering premiums after that date. Code of 1933, § 20-1104; *Pilgrims Health & Life Ins. Co.* v. *Scott,* 12 *Ga. App.* 749 (3) (78 S. E. 469) ; *Southern Life Ins. Co.* v. *Logan,* 9 *Ga. App.* 503 (2) (71 S. E. 742) ; *Industrial Life & Health Co.* v. *Thomas,* 43 *Ga. App.* 679 (159 S. E. 885). Under the foregoing authorities, there is no merit in the contention that the policy lapsed for nonpayment of premiums after December 31st.

The petition was not defective because of its failure to allege that more than 75 per cent., or more than 50, of the employees of the company were insured. This is purely a matter of defense,

350

to be set up by the insurance company in justification of its cancellation of the policy. The plaintiff having attached a copy of the policy to the petition and alleged a prima facie case, "the burden of showing how many members there are in the division, and whether the assessment regularly made would or would not have produced the amount named in the policy, is upon the insurance company." *Southern Life Ins. Co.* v. *Logan,* supra; *Masonic Relief Asso.* v. *Hicks,* supra.

The court did not err in overruling the grounds of demurrer, of which complaint is made.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*

ON MOTION FOR REHEARING.

The language in the opinion, ruling that the petition was not defective because of its failure to allege that more than 75 per cent., or more than 50, of the employees of the company were insured, has been substituted for the language first used by this court. The plaintiff having attached a copy of the policy of insurance to the petition and alleged a prima facie case, the burden of showing how many of the employees in question were insured was upon the insurance company. *Rehearing denied.*