26179. MOORE, adm'x., *v.* PRUDENTIAL INSURANCE CO.

DECIDED SEPTEMBER 9, 1937.

*A. R. Williamson,* for plaintiff.

*Cumming, Harper & Nixon, Jones, Johnston, Russell & Sparks,* for defendant.

GUERRY, J.  This is an action by Ernest C. Moore against the Prudential Insurance Company.  The plaintiff alleged that on January 12, 1920, the defendant issued to Ballard & Ballard Company a group-insurance policy upon its employees, that at that time he was an employee of Ballard & Ballard Company, and that a certificate of insurance was issued to him under this master policy.  The pertinent provisions of the master policy issued to Ballard & Ballard Company are as follows: "If any persons in-

sured under this policy shall become totally and permanently disabled, either physically or mentally, from any cause whatever, to such an extent that he (or she) is rendered wholly, continuously, and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on account of such insurance, while this policy is in full force and effect and the said person is less than 60 years of age, the company, upon receipt of due proof of such disability, will grant the following benefits: (1) Waiver of premiums. The company will waive the payment of that portion of each premium under this policy applicable to the insurance on the life of said disabled person, the due date of which, as specified on the first page hereof, shall occur after receipt by the company of said proof of such disability. Total and permanent disability. If the said employee, while less than sixty years of age, and while the insurance on the life of said employee under said policy is in full force and effect, shall become totally and permanently disabled or physically or mentally incapacitated to such an extent that he or she is unable to perform any work for any kind of compensation of financial value, said amount of insurance will be paid to said employee either in one sum twelve months after the company has received due proof of such disability or incapacity, or in monthly instalments during five years, the first instalment to be payable six months after the company has received due proof of such disability or incapacity; in accordance with the provisions of said policy. Irrespective of any other mode of termination, the insurance upon the life of any person insured hereunder shall cease and determine upon termination of the employment of such person with the employer, upon receipt by the company of written notification to that effect from the employer, except that at the option of the employer employees temporarily disabled shall during such periods be considered as being in the employ of the employer. Such written notification by the employer of any termination of insurance shall be satisfactory evidence that such insurance has terminated, and shall release the company of all claims on account of the insurance so terminated, except as to the right of conversion as herein provided. When the insurance on

the life of said employee shall terminate by reason of termination of employment for any reason whatsoever, the company will issue, upon application by said employee within thirty-one days after the date of such termination of employment, without further evidence of insurability, a policy on his or her life on any of the forms customarily issued by the company, except a policy of term insurance, for the same amount for which said employee was insured under said group-insurance policy at the time of the termination of employment, subject to the payment of premium for such policy at then current rates of the company, according to the occupation of and at the age attained by said employee at that time."

The petition alleged that on December 17, 1934, while said policy of insurance was in full force and effect, the plaintiff became totally and permanently disabled within the terms of the policy; that at said time he had a vested right in said insurance in the sum of $1000; that on February 5, 1935, the defendant wrongfully canceled the policy of insurance, including the group policy and the certificate issued to plaintiff; that such cancellation was positive and affirmative, both being canceled in toto, without his assent or agreement "and such cancellation was wrongful, and the sole cause of action herein set out is for the wrongful cancellation of said policy and certificate, and the damages suffered by plaintiff by reason of said wrongful cancellation;" that "the wrongful cancellation was made by the defendant for the purpose of avoiding liability to the plaintiff under the master policy and the certificate of insurance." The defendant filed its answer and admitted the employment, the issuance of the policy and the certificate thereunder, but alleged that if plaintiff became totally and permanently disabled in December, 1934, it had no knowledge thereof until July, 1935. The answer denied that there was any vested interest in said policy in favor of plaintiff by reason of the disability which occurred in December, 1934, denied the alleged wrongful cancellation of the policy, admitted that the certificate issued to the plaintiff thereunder was affirmatively and positively canceled on February 5, 1935, and denied that the group or master policy was canceled on that date. The answer further alleged that by reason of the fact that the employment of plaintiff by Ballard & Ballard Company terminated on February

5, 1935, the insurance issued to plaintiff terminated; that plaintiff made no effort to have the policy converted into other insurance; that the policy was canceled by its own terms; and that any premiums paid were paid by Ballard & Ballard Company and not by plaintiff, and were a gift by Ballard & Ballard Company to the plaintiff.

It appeared from the evidence that the plaintiff became an employee of Ballard & Ballard Company in July, 1919; that because of ill health, in December, 1934, at his request, he was given a leave of absence, with pay, until further notice; and that on February 5, 1935, he was formally discharged. On August 4, 1934, he was examined by Dr. John W. Brittingham, who testified that he found the plaintiff with coronary heart disease. In December, 1934, because of repeated attacks, he advised the plaintiff to cease work. "From December, 1934, and from that time right on he was unquestionably totally and permanently disabled from performing any work of any kind for compensation at all." William S. Snyder, clerk for Ballard & Ballard Company, swore that a day or two after the discharge he sent the following letter by U. S. mail, in a regular envelope, with a three-cent stamp on it, properly addressed to the plaintiff: "The Ballard & Ballard Company has been carrying for you, at their expense (while you were employed by them), a life-insurance policy for $1000 with the Prudential Insurance Company. Our records now show that your name was taken off of the active-service list, and your insurance therefore terminated on February 5, 1935. According to our regular rule, we will immediately notify the insurance company to this effect. Your group-life insurance certificate has no cash surrender value, and under the terms of our policy is automatically canceled *on the day you leave active service of this company*. However, you do have the privilege of presenting this old insurance certificate to your local insurance agent, and may purchase from the Prudential Insurance Company *without physical examination*, the same amount of insurance in any form of policy issued by them, but at regular premium rates at your age. The matter will have to be presented to the insurance company immediately,—after 30 days the conversion privilege is canceled. If you are interested, please see the Prudential Insurance Company, whose address is listed in your telephone directory. Your old in-

surance certificate has no value after you leave the active service with Ballard & Ballard Company, except the above-mentioned privilege of purchasing a new life-insurance policy *without* physical examination. To avoid any misunderstanding in the future, we recommend that you either destroy the certificate you now have, or mail it to us for cancellation. Yours very truly, Ballard & Ballard Co." Snyder testified that this letter was never returned; and that, as clerk for Ballard & Ballard Company, one of his duties was keeping the group-life insurance records, and having general charge of the group insurance written with the Prudential Insurance Company. "The certificate covering Mr. Moore was canceled, effective February 5, 1935, the date of his discharge." On June 24, 1935, he received from the plaintiff a letter asking him to please give him information regarding his group life insurance. On July 1, 1935, Ballard & Ballard Company wrote to the plaintiff as follows: "Your insurance policy with Ballard & Ballard Company has been canceled with the Prudential Insurance Company; therefore we are unable to do anything about it here. We would suggest that you take up the matter with the Prudential agent in your city. He in turn will take up the matter with his home office for handling. It is impossible for us to say just what attitude the insurance people will take in your case, as the claim is being made some months after you left our employ. Only recently new insurance policies have been issued to all of the Ballard employees, eliminating the disability clause. So we do not have that in effect now. If you still have your old policy, take it to the Prudential agent in your city and lay the matter before him. It may be that they can do something for you. As for us, however, we can not do a thing, as you have been out of employ since last February."

It appeared that it was not the custom of Ballard & Ballard Company to notify the insurance company when a certificate of an employee was canceled; "the practice and understanding between the Ballard & Ballard Company and the Prudential was, that when an employee leaves the employ of the Ballard & Ballard Company, cancellation is made immediately of the insurance certificate, and we immediately notify, in writing, the certificate-holder to that effect." On July 24, 1935, the defendant wrote to Ballard & Ballard Company that the plaintiff had taken the mat-

ter up with their agent in his city, and requested Ballard & Ballard Company to submit to them a statement as to the status of his certificate. Ballard & Ballard Company wrote to the defendant that the plaintiff was given leave of absence with pay, on December 15, 1934, and was discharged on February 5, 1935. "His insurance certificate was canceled as of that date, and he was notified accordingly." The letter also stated that the plaintiff had written, asking information about his policy on June 24 (see above), and the substance of the answer: "We regret that we are unable to tell you anything about Mr. Moore's illness or the nature of it. He was not well when he was granted the leave of absence, but just how grave his illness was we do not know." The group policy under which the plaintiff was insured was canceled on May 1, 1935, and a new master policy substituted therefor, which eliminated the disability feature. On August 7, 1935, the defendant wrote to A. R. Williamson, attorney for the plaintiff, as follows: "In connection with disability claim of the above named, the company advises that they have received information from the employer of the above named, indicating that the insurance was canceled on February 5, 1935. Consequently the certificate of insurance has been without value since that date. The contract provided that if proof of total and permanent disability is furnished the company while the contract is in full force and effect and while there is no default in the payment of premiums, the company, upon receipt of such proof, will waive the payment of each premium that may become payable thereafter. No proof having been furnished while the contract was in full force and effect, the company is unable to consider a claim." Similar letters were thereafter written by the defendant to the plaintiff. The plaintiff testified that he did not agree to the cancellation of his certificate, and that he did not remember receiving the letter advising him that it was canceled. At the conclusion of the evidence the judge directed a verdict for the defendant, and the plaintiff excepted. Suggestion of his death has been made in this court, and his administratrix has been made a party in his stead. Code, § 24-3641.

The judge did not err in directing the verdict. The plaintiff's action does not seek to recover benefits under the provisions of the policy (although he names this as an element of his damage), but is expressly an action for alleged wrongful cancellation of his cer-

tificate in so far as it relates to total and permanent disability. Ordinarily, where an insurance company wrongfully refuses to accept further premiums, or to continue the insurance, and the insured brings an action for breach of the contract, the measure of damage in such a case is "the amount of premiums paid, with interest on each from the time such payment was made." *Alabama Gold Life Insurance Co.* v. *Garmany, 74 Ga.* 51. It is clear to us, even if the proof sustained the present action for a wrongful cancellation of the certificate, that there would be no liability in favor of the plaintiff for premiums paid because he did not pay them, but they were paid for him by his employer. It is apparent that in such case the plaintiff sustained no damage in so far as the premiums are concerned. Under the view that we take of the case it is not now necessary to determine whether, in a suit for a repudiation of a contract of insurance providing against total and permanent disability, benefits claimed to have attached before its cancellation would be a proper measure of damage. The defect in the present case is that the evidence demands a finding that there was no wrongful cancellation. The plaintiff was bound by the provisions of the master policy issued to Ballard & Ballard Company, his employer. *Metropolitan Life Insurance Co.* v. *Fields, 53 Ga. App.* 76, 78 (184 S. E. 752). Attached to and made a part of the group contract was the application of Ballard & Ballard Company, which provided, in part, as follows: "The insurance of any individual employee, who may become insured under the policy hereby applied for, is to continue only so long as such employee remains in the employ of the applicant." The policy provided, in part, that, "irrespective of any other mode of termination, the insurance upon the life of any person insured under this policy shall automatically cease and determine upon termination of the employment of such person with the employer." These provisions effectuated an automatic cancellation of the certificate of insurance issued to the plaintiff. *Cutledge* v. *Ætna Life Ins. Co., 53 Ga. App.* 473 (186 S. E. 208), and cit. It is true that the provision in the policy is that "the insurance upon the life of any person" shall cease upon termination of employment, and does not specifically mention the disability feature of the certificate. However, "it is plain that the underlying basis and principle of the certificate of insurance sued upon" was plain-

tiff's employment by Ballard & Ballard Company. *Cutledge* case, supra. The certificate contained both the life and disability clauses, and all of the provisions of the policy must be construed as applying to both features. Moreover, the application provides that the "insurance" is to continue "only so long as such employee remains in the employ of the applicant." This is the only reasonable construction of the contract. If the contract provided for an automatic cancellation of the certificate upon the termination of the plaintiff's employment, then we fail to see how any notification of cancellation on the part of the defendant could, by any stretch of reasoning, be termed wrongful.

In each case involving a suit for wrongful cancellation of an insurance contract that our research has discovered, the insurer by affirmative action canceled the contract when it was under a duty to keep it in force according to its terms. For instance, in *Alabama Gold Life Ins. Co.* v. *Garmany,* supra, the insurer refused to accept premiums tendered in time, under a life policy which it had no authority to terminate. In *Glover* v. *Banker's Health & Life Ins. Co.,* 30 *Ga. App.* 308 (117 S. E. 665), according to the allegations of the petition which was before the court on demurrer, the insurer refused to accept premiums on an insurance contract which it had no right to terminate. In this class falls also *Prudential Ins. Co.* v. *Ferguson,* 51 *Ga. App.* 341 (180 S. E. 503). There the employer paid the premiums on the group policy by deducting the amount due by each employee from his wages. The case was before this court on demurrer; and it was alleged that the insurer, without any authority under the provisions of the policy or the certificate, canceled the policy and substituted therefor another policy which did not contain the same protection afforded under the original policy. The petition further alleged that the same amount was deducted from his wages after the substitution; that there was no mutual agreement or assent for said policy to be canceled; and that he was never consulted about a cancellation or advised that the company considered said insurance contract canceled. In the present case no duty rested on the defendant to keep the policy in force. It became canceled under its own terms as of the date of his discharge from the service of Ballard & Ballard Company. The refusal to consider or pay the claim because, under the defendant's construction

of the terms of the contract (the correctness of which we are not now called upon to determine), proofs of loss had not been filed in time, was nothing more than a refusal to pay, and not an unauthorized repudiation of the contract. "Where there is a breach of a contract of insurance by the insurer, as where an insurance company refuses to accept a premium on a life and health insurance policy tendered in accordance with the terms of the contract, and thus repudiates the contract, the insured may recover any damage he has sustained by reason of the breach, and ordinarily his measure of damages is the premiums paid, with interest thereon. [Citations.] While, as a general rule, where the action of the insurance company does not amount to a repudiation of the contract of insurance, but amounts merely to a refusal to pay, as required by the policy, sick benefits accruing under its terms, the right of action of the insured is governed by the policy itself, and he is entitled only to sue for and recover the amount of the benefits thus accruing (29 C. J. 279), still if the action of the insurance company amounts to a repudiation of the contract itself, and is accompanied by a declaration to the effect that no future premiums will be received, the insured may treat the contract as breached, and sue for the premiums paid with interest thereon." *Industrial Life & Health Insurance Co.* v. *Thomas,* 43 *Ga. App.* 679 (159 S. E. 885).

In the present case there was no wrongful refusal to keep in force a valid and subsisting contract of insurance belonging to the insured, which he was entitled to have remain in force, but there was merely a refusal to pay benefits accruing under the terms of the contract. The certificate was a gift from the employer to the plaintiff as employee. The employer had the right to determine who was its employee, and had the right at any time to cancel his certificate, or even discontinue the entire group policy. *Curd* v. *Travelers Insurance Co.,* 51 *Ga. App.* 306 (180 S. E. 249); *Lancaster* v. *Travelers Insurance Co.,* 54 *Ga. App.* 718 (189 S. E. 79). Certainly, if the employer had elected, as it had a right to do, to cancel the group policy with the defendant, it could not be said that the defendant repudiated the contract by an entry of cancellation. If the insured became disabled, under the terms of the contract, before cancellation, his rights should be determined by a suit under the provisions of the contract. It is ordi-

narily true that a cancellation of such a contract does not affect claims which have already attached under its terms before the cancellation. *Liner* v. *Travelers Ins. Co.*, 50 *Ga. App.* 643 (180 S. E. 383). See also 6 Couch, Enc. Ins. Law, § 1435, as follows: "A policy can not be canceled by the insurer after a loss has occurred, so as to affect the rights of the insured so far as that particular loss is concerned; that is, as a general rule, the right of an insurer to cancel its policy must be exercised before the rights of the insured have become fixed by a loss within the terms of the contract." However, we are not to be construed as holding that the insured is entitled to recover should he bring a suit on the policy. To illustrate our position, suppose A contracted with an insurance company for an accident contract, insuring him for one year. On the last day of the year covered by the contract A is injured in an automobile accident. Some ten days later A submits proof of loss to the insurer, and consideration of the claim is declined on the ground that the policy required proofs of loss to be submitted while the contract was in force. This certainly would not amount to a wrongful cancellation of the policy, for it had already lapsed. Whether or not the insurer was correct in its interpretation of the terms of the contract, and whether it was liable under its terms, should be adjudicated in a suit to enforce payment of the claim under the contract, and not by a suit for repudiation of the contract. Under the evidence in this case the cancellation of the certificate by the employer and its ratification by the defendant did not amount to a wrongful repudiation of the contract, and the present form of action will not lie. We can see no reason why a suit on the policy might not adjudicate all of the rights of the plaintiff.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*