26490. BROTHERS & SISTERS OF CHARITY *v.* RENFROE.

DECIDED FEBRUARY 3, 1938. REHEARING DENIED MARCH 29, 1938.

*Thomas A. Jacobs, Grady Gillon,* for plaintiff in error.

*Cecil A. Baldwin, Mallory C. Atkinson,* contra.

GUERRY, J. George Renfroe entered suit against the "Brothers and Sisters of Charity." He alleged, that the defendant was a corporation regularly organized ":for the purpose of taking care of the sick members and burying those who die while in good standing;" that in July, 1895, the plaintiff was accepted as a member of the defendant society, and remained as such until July 25, 1935, on which date he was wrongfully expelled from the society on a charge that he was a "traitor" thereto, which charge he alleges was untrue; that during the period from July, 1895, to July 25, 1935, he paid all of his dues, together with the required entrance fee, and various assessments for death of members during that time, all of which amounted to $148; that by the illegal action of the defendant in expelling him it repudiated and annuled its contract whereby "it agreed to give a $30 burial to plaintiff," and to pay his widow assessments of twenty-five cents each for each member of the society living at the time of his death; that by reason of its illegal action the defendant had damaged the plaintiff in "the principal sum of $148, interest to the time of the filing of this suit in the sum of $172.20, and future interest at the rate of 7 per cent. per annum, and attorney's fees in the sum of $100," for which sums the plaintiff prayed judgment. The defendant filed a demurrer and an answer. The demurrer was substantially: (1) that the petition set out no cause of action; (2) that "the amounts sued for are too vague, uncertain, speculative, imaginary, remote, and indefinite to be the basis of any recovery;" (3) that there is no authority of law enabling plaintiff to recover back the sums paid into the society, nor is there any provision of law authorizing the recovery of attorney's fees. The trial judge overruled this demurrer and no exceptions were taken thereto. The defendant's answer denied liability, and alleged that the by-laws of the society provided that "no member shall be turned out in a heat of passion, any members found to be a traitor of this society shall be dropped from the roll," and further alleged specifically and in detail that the plaintiff had collected three dollars for the benefit of the society and failed to account for it, but had appropriated it to his own use and had thereby committed the offense of larceny after trust, and that there had been a trial of defendant before the

members of the society and he had been excluded by a vote of 19 to 2 and by reason of this fact he lost all rights in the society as a member thereof and all benefits due by reason thereof.

The judge referred the case to an auditor, and the pertinent parts of his report were as follows: "7. After hearing the testimony and argument of counsel, I find that the main questions involved are questions of fact, the law of the case having been fixed by the judgment of the court overruling the demurrers filed in said case. I further find that the plaintiff has proved his claim to the satisfaction of the auditor, as follows: I find that the plaintiff has paid dues of 25 cents per month to the defendant for a period of forty years from 1895 to 1935, with the exception of 2 months, during which period the plaintiff was suspended and paid no dues as per stipulation, said dues amounting to the sum of $119.50. I also find that the plaintiff paid a $3 initiation fee when admitted to membership in said defendant society. I further find that during the period of 1895 to 1935 the defendant paid the sum of $20.75 to the defendant society, representing an assessment of 25 cents each on the death of 83 members, making a total of $143.25 paid to said society during the period 1895 to 1935. 8. I further find that the trial of George Renfroe, on July 25, 1935, by the defendant society was irregular and in prejudice of the rights of George Renfroe. The only provision in the by-laws relating to the trial of members of said society is as follows: [Same by-law as pleaded in the answer and above quoted]. And during the progress of the trial of George Renfroe aforesaid the president of the defendant society, who was presiding at the time, instead of submitting the entire matter to the vote of the society members present, made the following statement after hearing the witnesses for complainant in the case: 'Now Brother Renfroe is an officer, he has betrayed his trust to the society, and is to be dealt with under section twenty-one as being a traitor. . .' Under a reasonable construction of § 21 of the by-laws aforesaid, it was necessary that the member on trial first be found to be a traitor to the society before action could be taken towards dropping his name from the roll. Said by-law makes it mandatory that a member, if found to be a traitor to the society, shall be dropped from the roll of members, and it was therefore a primary requisite that the member on trial be first found to be a traitor before he could

be dropped. Said action aforesaid on the part of the presiding officer in not permitting the members of the society present at said trial to vote on the question as to whether George Renfroe was a traitor to the society, but in only permitting them to vote on the question of expelling him from the society, rendered said trial nugatory. 9. I further find, from a consideration of the evidence in this case, that the actions of George Renfroe in connection with the transaction between Clifford Vinson and himself were not such as to constitute an act of treachery on the part of George Renfroe toward the defendant society, and that George Renfroe was not a traitor to the defendant society, and that the action of the defendant society in expelling George Renfroe from membership therein was without just cause or legal warrant. 10. I further find that the charge upon which the plaintiff, George Renfroe, was brought to trial by the defendant, Brothers and Sisters of Charity, was not a matter concerning the defendant, and that the defendant had no jurisdiction over or interest in the subject-matter of the controversy between George Renfroe and the complainant, Clifford Vinson, for the reason that § 16 of the by-laws of the society, to wit, 'Any person buried in the cemetery of the society must pay $5 for a grave, $3 will go to the society and $2 to sexton for digging grave. Any member burying a person of their family that is not a member must pay half of what the society gets, which will be $1.50,' has to do only with persons buried in the cemetery of the society. The testimony in the case shows: First, neither Clifford Vinson nor the deceased woman was a member of the society. Second, that the deceased was not buried in the cemetery belonging to the society. Therefore, the arrangement between Clifford Vinson and George Renfroe relative to the burial of the deceased was a private one."

Exceptions were taken to paragraphs 7, 8, 9, 10 of the auditor's report, the exceptions to paragraph 7 going only to that part finding that the plaintiff had established his claim. The jury found paragraphs 7, 9, and 10 of the auditor's report correct, and found in favor of the defendant's exception to paragraph 8. The judge entered judgment in favor of the plaintiff for the amount sued for, in the principal sum of $143.25 and interest in the sum of $187.93. The defendant filed a motion for new trial on the general grounds, and on special grounds substantially as follows: (1)

That, since the jury found in favor of the defendant's exceptions to paragraph 8 of the auditor's report, the judge could not legally enter a judgment for the plaintiff. (2) Error in the charge of the judge, as follows: "It was stipulated between counsel in this case that the plaintiff George Renfroe was suspended at one time for a period of two months, during which period he paid no dues, and at the end of which time he was reinstated. I charge you under the law of this case that fact has no bearing on plaintiff's alleged claim for a refund of dues and moneys paid over an alleged period of approximately forty years, except as to those two months and any moneys he might claim to have paid during that two-months interval. That is, the fact stipulated does not, under the law of this case, restrict the plaintiff to a recovery of such alleged amounts as may have been paid since that time, but, on the contrary, only prevents the plaintiff from recovering any amounts alleged to have been paid during those two months." (3) Error in charging the jury that the report of the auditor was to be taken as prima facie correct, and that the burden was on the defendant to show to the "reasonable satisfaction" of the jury that the report of the auditor was erroneous.

Of unusual interest are the following by-laws of the defendant: "1. This society was organized Oct. 6, 1882, for the purpose of taking care of its sick and burying its dead. 2. It shall have a President, Vice-President, Chaplain, Secretary, Treasurer, Banking Committees and Chairman, Sick Committees, and Board of Trustees. 3. The duty of the President is to preside at all meetings and see that all the requirements of the law are carried out. The Vice-President will preside in absence of the President. 4. The duty of the Secretary is to keep a correct account of all proceedings of this society's business affairs; failing to do must be fined according to law. 5. The Treasurer must keep a correct account of all money put in his or her hand and pay out only by order of the President or Vice-President. 7. This society turns out once each year, either by having a dinner or annual sermon; any member failing to turn out to a sermon or funeral must pay $1 without a lawful excuse, when out to funerals all Sisters must wear black dresses, black hats, and white gloves, any member failing to dress as required must pay $1. Bros. must wear white gloves. 8. When out to annual sermon all Sisters must wear white dresses, white hats, white gloves;

Brother's white gloves; any member failing to dress as required must pay $1. 9. This society does not pay for accidents. 10. Any member suffer from burned house or other household, the society is not responsible for it but will donate as it sees fit. 11. The Society pays six full weeks sick benefit, then after half benefit, the President must see that all the laws are carried out. 12. If any member having a long lingering sickness, the society will not pay full benefits but will donate he or she something to help them occasionally. 13. All members pay up in January with the book will be donated Feb. dues, and all the officers around the table will be donated. 14. The enter fee of this society is $3 for adults, $1.50 for children under 15 years. 15. This society give $30 burial for adults and $15 for children. 16. Any person buried in the cemetery of the society must pay $5 for a grave; $3 will go to the society and $2 to sexton for digging grave. Any member burying a person of their family that is not a member must pay half of what the society gets, which will be $1.50. 17. All members of the Brothers and Sisters of Charity are expected to treat each other with due respect, especially in our meetings; failing to do so will be fined the sum of 50 cents. 18. The sick committees shall have a Chairman whose duty is to see that the sick members are attended to, and get their sick benefits, which is $1.50 per wk. for adults and .75 per wk. for children's; if a sick committee fails to discharge their duty will be fined 25 cents, and if the chairman fails to discharge her or his duty will be fined the sum of 50 cents, the sick must be confined to their bed 4 days before they are entitled to sick benefits. 19. If any member miss 3 monthly meetings without lawful excuse will be fined 50 cts., also if a member be found drunk and disorderly will be fined the sum of $5. 20. Any members stay on finance 3 months must be brought to trial. 21. No member shall be turned out in heat of passion; any members be found to be a traitor of this society their name shall be dropped from the roll. 22. Any member failing to pay their fine put on them by the society will be expelled. 23. Any member leave home and get sick and fail to send a certificate from the Dr. can not get any aid from the society; if any member be found out be dropped from the society and be handled by the civil authorities the President is empowered to force said laws. 24. No member is allowed to vote in time of electing officers, if on

finance, all members are assessed at the death of a member 25 cts. for adults and 10 cts. for children. 29. The sick Treasurer of this society must have a bondsman to exceed twice the amount of the sick Treas. in real estate."

■ The defendant may be termed a fraternal benefit order, association, or society, organized for the purpose of taking care of the sick members and burying those who die while in good standing. Code, § 56-1701. Its membership is less than 5000, and §§ 56-1601 et seq. do not apply to it (§ 56-1602). It is exempt from the operation of the insurance laws of this State. § 56-1704. There is some conflict in the authorities as to whether a member of such a society may recover all assessments paid in, upon being illegally expelled therefrom. See, generally, 19 R. C. L. 1252. In this State it seems that such an action will lie. *Order of Railway Conductors of America* v. *Clark*, 159 *Ga.* 390 (125 S. E. 841). The court overruled a general demurrer to the petition; and the defendant having failed to take exception thereto, the law of the case is fixed. *Ogletree* v. *Stanley*, 43 *Ga. App.* 253 (158 S. E. 465). In the first special ground of the motion for new trial complaint is made that in view of the finding of the jury in favor of the defendant's exceptions to the eighth finding of fact by the auditor, to wit, that the trial of the plaintiff by the defendant was irregular and in prejudice of his rights, no judgment could be entered in favor of the plaintiff. We do not hold this view. The auditor further found, in paragraphs 9 and 10 of his report, that there was not sufficient evidence to authorize the defendant to expel the plaintiff as a traitor, as provided in its by-laws; and that the act charged against the plaintiff and for which he was expelled was not a matter concerning the defendant society, and for which they had a right to expel the plaintiff. If these facts be true, and we must take them to be so, it certainly follows that the expulsion of the plaintiff from the society was illegal and wrongful, even though the trial was regular.

■ In the second special ground of the motion for new trial exceptions are taken to the following charge of the court: "It was stipulated between counsel in this case that the plaintiff George Renfroe was suspended at one time for a period of two months, during which period he paid no dues, and at the end of which time he was reinstated. I charge you, under the law of this case, that

fact has no bearing on plaintiff's alleged claim for a refund of dues and moneys paid over an alleged period of approximately forty years, except as to those two months and any moneys he might claim to have paid during that two-months interval. That is, the fact stipulated does not, under the law of this case, restrict the plaintiff to a recovery of such alleged amounts as may have been paid since that time, but, on the contrary, only prevents the plaintiff from recovering any amounts alleged to have been paid during those two months." It is contended that the testimony of the plaintiff himself showed that he was expelled from the defendant society in January, 1931, and by stipulation of counsel it was agreed that he was not reinstated for two months, and therefore that he could not recover dues and assessments paid in before that time. We can not so agree. The reinstatement of the plaintiff by the defendant society did not give rise to a new contract, but operated merely to revive the original contract. 45 C. J. 131; International Association of Machinists v. Grant, 21 Ala. App. 84 (105 So. 438).

■ There is no merit in the third special ground of the motion for new trial. Code, § 10-402.

■ It is contended that the amount sued for was an unliquidated demand, and therefore that interest was not recoverable. The courts of Georgia, beginning with the case of *Alabama Gold Life Insurance Co.* v. *Garmany*, 74 *Ga.* 51, have without exception said that the measure of damage for the wrongful repudiation of a contract of insurance is the return of the premiums paid, together with interest thereon. We think this principle applicable here. The present suit was for the recovery of all dues and assessments paid to the defendant society by plaintiff from the date of his membership, July, 1895, to the date of his alleged illegal expulsion from the society, July 25, 1935. The defendant's answer denied any indebtedness to the plaintiff, and set up that he had been lawfully expelled according to the by-laws of the society on the last-mentioned date. The answer made no issue as to the amount of dues and assessments paid. As shown by the record, it is undisputed that the plaintiff was a member of the defendant society, in good standing, for forty years, with the exception of two months in 1931. The dues of the society were twenty-five cents per month. In addition to the payment of these dues plain-

tiff testified that during this time, he paid a twenty-five-cent assessment for each of eighty-five members who died during this time, which assessments were provided for in the by-laws. As to this fact neither the pleadings nor the evidence of the defendant took issue. It is also undisputed in the record that the defendant received $3 from the plaintiff as an initiation fee. All of these sums added together make the exact total found to be due by the auditor. There was a dispute as to the exact amount of cash paid to the defendant society, in that it appears that for some time during the forty-year period the plaintiff was an officer of the defendant, which exempted him from the payment of dues. However, this can make no material difference. This fact merely amounted to payment of dues by rendition of services, and is the same as if actual payment of money had been made. We see no legitimate ground upon which to distinguish this case from the ruling of the *Garmany* and similar cases. See *Bankers Health & Life Insurance Co.* v. *James,* 177 *Ga.* 520 (170 S. E. 357). However, there is a further valid reason why this court should not hold that interest was wrongfully included in the judgment rendered by the judge. In paragraph 10 of the auditor's report we find the following: "I therefore find in favor of the plaintiff on the issues of fact in the case, and against the defendant, in the sum of $143.25, and $185.15 interest to date, with cost of suit." While in paragraph 1 of the exceptions to the auditor's report exception was taken to the finding of principal and interest, it appears that this exception was abandoned. It certainly follows, if the facts authorize a judgment against the defendant, that the fact that interest should be added to the judgment was foreclosed as to the defendant, in failing to except to this finding. Findings of fact or law by an auditor become the law of the case unless excepted to. The evidence sustained the findings of fact by the auditor set out in paragraphs 7, 9, and 10. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*