8997.  FARROW v. STATE MUTUAL LIFE INSURANCE CO.

The trial judge properly sustained the demurrer to the petition.
(a) No breach of any material condition of the policy is sufficiently alleged.
(b) Where a contract of life insurance is void ab initio, the insured, upon proper pleadings, would have the right to recover all the premiums paid thereon.
(c) Where the risk has once attached under a policy, and there has been no fraud, a recovery of all the premiums paid can not be had because of a breach of some provision of the contract.

                        DECIDED JULY 30, 1918.

Action for breach of contract; from city court of Floyd county —Judge Nunnally. May 26, 1917.

Ocie D. Farrow sued the State Mutual Life Insurance Company, alleging in part that on April 21, 1909, he insured his life in that company under a policy which provides for an annual premium of $32.62, and that the said premium "may be reduced" by ·dividends allowed. The 7th, 8th, 9th, 10th and 11th paragraphs of the petition are as follows: "Seventh: Plaintiff has paid to defendant all sums required of plaintiff under said contract of insurance, and has performed all the other obligations resting upon plaintiff under said policy, and said policy is a live policy and of full force and effect at this time. Eighth: Under its terms said policy has a cash surrender value of $104 at the end of its sixth year. The sixth year of said policy expired on April 21, 1915. Said policy provides that upon the application of the insured, said cash sur-·render value will be paid to the insured by the company. Ninth: Plaintiff has demanded of defendant the payment to plaintiff of the said cash surrender value of said policy, but defendant has refused to pay said cash surrender value or any part thereof. Tenth: Plaintiff shows that by refusing to pay plaintiff the cash surrender value of said policy as aforesaid, defendant has breached its said contract of insurance with plaintiff. Eleventh: By reason of said breach of contract, by defendant, plaintiff is entitled to recover of defendant the total amount of premiums paid by defendant [plaintiff?] on said policy, together with lawful interest from the date of each of said payments." A copy of the policy is attached to the petition, and contains the following provision: "If the insured makes written application within six months after default in payment of premiums, the company will extend this policy as a

term policy for its full amount; or, upon surrender of this policy, will issue a participating paid-up policy, or will pay the cash surrender value, as stated in the table on the third page hereof under the respective heads." The policy had attached to it a table of "guaranteed surrender values," and this showed that the cash value of the policy at the end of the sixth year was $104. A general demurrer to the petition was sustained, and the plaintiff excepted.

*Brewster, Howell & Heyman, Mark Bolding,* for plaintiff.
*Maddox & Doyal, Alex. C. King,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) The demurrer to the petition in this case was properly sustained. It will be noted that the suit is not for the "guaranteed surrender value" of the policy, but for the entire amount of premiums paid. Admitting every fact alleged, plaintiff would not be entitled to recover all the premiums which he had paid on this policy. This is the measure of damages in those cases only where the policy, from fraud or other cause, is void ab initio. This proposition we will discuss later. In the broadest sense two propositions are presented for solution by the record in this case: (1) Does the petition show such a breach of the contract of insurance as would authorize a cancellation thereof? (2) Granting that a suit would lie, is the amount of premiums paid on the policy the proper measure of damages under the facts stated in the petition? These two proposition we will discuss jointly, as they are interlocked in some of the decisions. The petition is so uncertain and indefinite that it is impossible to determine from it which one of two of the provisions of the contract the plaintiff sought to allege was breached. One of these, copied above, provides that "if the insured makes written application within six months after default in payment of premium, the company . . will pay the cash surrender value, as stated in the table on the third page hereof under the respective heads." The other, the fourth of five "dividend options," is as follows: "Receive the dividend, together with the guaranteed cash value, and discontinue this policy." The contract provides also that "A dividend will be declared at the end of the first policy year, and at the end of each year thereafter, during the continuance of this policy. Dividends may be received by the insured in accordance with any one of the following five dividend options." It is further provided by the contract that option four,

above quoted, will not be allowed before the end of the third policy year. The petition should have been definite enough to determine which one of these provisions the pleader claimed had been breached, as the conditions under which the "guaranteed surrender value" could be obtained were different in each. The allegation in the petition in reference to the demand made by the insured upon the company is as follows: "Plaintiff has demanded of defendant the payment to plaintiff of the said cash surrender value of said policy, but defendant has refused to pay said cash surrender value or any part thereof." As the petition`stands, it does not sufficiently allege a breach of either of these provisions.

If for any reason the policy had been absolutely void from its inception, then, upon proper pleadings, a suit would lie for the recovery of all the premiums paid thereon. If the contract is void, the insurance company has run no risk. Lord Mansfield said. many years ago: "When the risk has not been run, whether its not having been run was owing to the fault, pleasure, or will of the insured, or to any other cause, the premium shall be returned." This principle' is applicable whether one or more premiums have been paid on a void policy. "If the policy was void ab initio, the premiums paid, with interest thereon, is the correct measure of damages, for the reason that in such cases no services have been rendered and no benefits have been received. Fisher v. Ins. Co., 162 Mass. 236, 38 N. E. 503; Ins. Co. v. McCormick, 19 Ind. App. 52, 49 N. E. 44, 65 Am. St. R. 392; Ellis v. Friendly Ass'n, 16 Pa. Supr. Ct. 607." Supreme Lodge K. of P. v. Neeley (Tex. Civ. App.), 135 S. W. 1049 (6). If the contention of the plaintiff should be carried out, the result would be that the same rule would apply to this case as when the policy was void ab initio; but this is not the proper rule of damages under the pleadings in this case. The policy was admittedly valid, the premiums thereon had been voluntarily paid, the policy had been in force about six years, and there was no default in payment of the premiums at the time suit was brought. No fraud had been practiced on the insured, and no such claim was made in the pleadings. Therefore, the only reason that the plaintiff could urge for a cancellation of the contract and the return of all the premiums was the failure of the company to pay the "cash surrender value" of the policy as above set out, and this is not a sufficient reason for such action. But the

petition does allege, "Plaintiff shows that by refusing to pay plaintiff the cash surrender value of said policy, as aforesaid, defendant has breached its said contract of insurance with plaintiff."

What is a "contract of insurance," of life insurance, under the laws of Georgia? Our Civil Code (1910), § 2496, says: "An insurance upon life is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another dies within the time limited by the policy. The life may be that of the assured, or of another in whose continuance the assured has an interest." The insurance company in the instant case agrees to pay to the estate of the insured $1,000 "immediately upon receipt and approval of proofs of death" of the insured. This is the main, the principal, the prime contract. All other conditions and stipulations are secondary and subordinate. The petition does not show that the insurance company has done anything even to indicate a breach that is vital to the main contract, or anything that amounts to "an intimation of an intention to abandon and altogether to refuse performance of the contract." Norrington v. Wright, 115 U. S. 188, 200 (6 Sup. Ct. 12, 29 L. ed. 366); Blackburn v. Reilly, 47 N. J. Law, 290 (2) (1 Atl. 27, 54 Am. R. 159). In Weintz v. Hefner, 78 Ill. 27, the 2d and 3d headnotes are as follows: "2. In order to justify an abandonment of a contract, and the proper remedy growing out of it, the failure of the opposite party must be a total one. The object of the contract must have been defeated or rendered unattainable by his misconduct or default. 3. For partial dereliction and non-compliance in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must seek his remedy upon the stipulations of the contract itself." In the instant case what "the stipulations of the contract itself" are have been heretofore pointed out. In the case of Lewis v. New York Life Ins. Co., 181 Fed. 433 (104 C. C. A. 181), Archbald, District Judge, said: "But never does the failure to perform afford ground for rescission, unless it be such as defeat the object of the contract, and not simply go to a subsidiary part of it, which can be fully compensated in damages. 9 Cyc. 635, 650; 24 Am. & Eng. Enc. Law (2d ed.) 644. As is said in Weintz v. Hafner, 78 Ill. 27: 'For partial dereliction and noncompliance in matters not necessarily of first importance to the accomplishment of the object of the contract, the

party injured must still seek his remedy upon the stipulations of the contract itself.' Or, as is put in City of Elgin *v.* Joslyn, 136 Ill. 525, 26 N. E. 1090: 'A slight or partial neglect to observe some of the terms or conditions of a contract will not justify a rescission or abandonment.' It is only where the breach goes to that which is vital that this course is open. But, if that be so, the plaintiff had no right to throw up the policy and sue for the premiums simply because the company failed to honor, offhand, the additional loan required of them. The refusal, under the circumstances, can not be said to have evinced an intent not to be bound by or live up to the terms of the contract, if that is the criterion. Indeed, it is a question whether, rightly considered, there was a refusal at all; the plaintiff not having given time for it. And much less can it be said that, the company having broken one part of the contract, there was no assurance that they would regard the rest of it, which magnifies the breach out of all proportion to its real significance. The fact is that the agreement for a loan was merely subsidiary to the main purpose of the policy, which was to insure the plaintiff for the benefit of the party designated; the right to a progressive loan as the policy aged, being an accommodation altogether secondary and subordinate, valuable, no doubt, but not vital. It certainly was no more important than the right, under certain conditions, to a paid-up policy; and yet it has been held, in numerous cases, that the breach of this provision does not entitle the insured to recover the premiums paid as upon a rescission. Watts *v.* Phœnix Mut. Life Ins. Co., 16 Blatchf. 228, Fed. Cas. No. 17, 294; Phœnix Mut. Life Ins. Co. *v.* Baker, 85 Ill. 410; Rumbold *v.* Penn Mut. Life Ins. Co., 7 Mo. App. 71; Union Central Life Ins. Co. *v.* McHugh, 7 Neb. 66; Insurance Co. *v.* Matthews, 8 Lea (Tenn.), 499. And the same ruling was made with regard to the refusal to permit a change of the beneficiary. Harris *v.* Scrivener (Tex. Civ. App.), 78 S. W. 705. And the failure to return a part of the premiums, as agreed in the policy. Insurance Co. *v.* Heidel, 8 Lea (Tenn.), 488. It is true that, in each of these cases, the action was for damages for a breach of the contract, and not in terms for the premiums. But it was held in each, which is the significant thing, that the premiums were not a measure of the damages."

It is true that there is a line of cases in which it has been held

that where the policy has been improperly canceled, all premiums paid may be recovered. However, an examination of these decisions will show that none of them are applicable to the facts of the instant case. Courts of other States and writers of text-books have criticised the reasoning and conclusions of these cases as unsound. In the case of Supreme Lodge K. of P., supra, Jenkins, J., said: "The reasoning of the courts holding that the premiums paid, with the interest thereon, is the proper measure of damages, where an insurance company has undertaken to repudiate its contract, is not at all satisfactory to our minds. . . 'All of the courts, we believe, except the North Carolina court, base their holding that the premiums paid, with interest on the same, is the proper measure of damages upon the proposition that, inasmuch as the insured has not died, the company has been out nothing, and the insured has received nothing. This assumed premise has been rejected by a majority of the courts, and is, to our minds, as baseless as that one has received no consideration for a premium for fire insurance, because his house has not burned. It is a well-established rule that, if a party sues for the breach of an executory contract, he must account for the benefits, if any, which he has received under such contract. Richards v. Allen, 17 Me. 296. In Speer v. Insurance Co., 36 Hun (N. Y.), 323, the court says: 'The recovery of the premiums and interest could be sustained only on the ground of a total failure of consideration. When the policy was valid up to the time of its cancellation, there is no such failure.' . . We doubt if the cases holding that the premiums paid, with interest on the same, is the measure of damages where the contract has been wrongfully repudiated, is satisfactory to those jurisdictions where the same has been held, though the courts there may feel constrained to follow them." An examination of many of the decisions where the recovery was for the amount of the premiums will show that in those cases the question as to the measure of damages was not raised.

The following citations support the ruling made in the present case: "The defendant carried the insurance upon the life of plaintiff's husband for the benefit of the plaintiff for six years and earned the premiums paid therefor, and the plaintiff, is not entitled to recover them back." McElwain v. Metropolitan

Life (Ins. Co., 50 App. Div. 66 (63 N. Y. Supp. 295). Where a risk once attaches under a valid policy, premiums paid upon it during its continuance can not be recovered back as for money had and received. Continental Life Ins. Co. *v.* Houser, 89 Ind. 258. "The rule is well established that, in the absence of fraud, where the risk has once attached under a policy, a recovery of premiums paid can not be had because of a breach of some provision of the policy." Harris *v.* Scrivener (Tex. Civ. App.), 78 S. W. 705. "Where the risk has once attached, premiums can not be recovered, although the company may subsequently wrongfully declare a forfeiture of the policy." Standley *v.* Northwestern Mutual Life Ins. Co., 95 Ind. 254. "The policy was valid in its inception, and there was for a time a risk, and the general rule is that where the risk attaches premiums can not be recovered from the company. Bliss Life Ins. 750; May, Ins. § 567." Continental Life Ins. Co. *v.* Houser, 89 Ind. 258.

The following citations show the true measure of damages where the company has so acted as to authorize a cancellation of the contract: "The measure of damages would be the cash surrender value of the policies." Metropolitan Life Ins. Co. *v.* McCormick, 19 Ind. App. 49, 52 (49 N. E. 44, 65 Am. St. R. 392). "The measure of damages for the wrongful cancellation of a life policy is the value of the policy at the time of its cancellation." Supreme Lodge K. of P. *v.* Neeley, *supra.* "The measure of damages for the breach of an agreement to deliver a paid-up policy of insurance, where there is an existing risk and the premiums paid were earned, is the value of the paid-up policy at the time of the demand and refusal, and interest." Rumbold *v.* Penn Mut. Life Ins. Co., 7 Mo. App. 71. "If a policy of insurance provides that the assured, after the payment of three annual premiums and the surrender of the original policy, may have a paid-up policy for the amount of the premiums actually paid, subject to the unpaid notes given, the measure of damages for a refusal to give a paid-up policy after performance of the conditions precedent is not the amount of the premiums paid, less the notes given, but the actual value of such a policy." Phoenix Mut. Life Ins. Co. *v.* Baker, 85 Ill. 411 (4). See also Union Central Life Ins. Co. *v.* McHugh, 7 Neb. 66.

In discussing the case of Lovell *v.* Insurance Co., reported in

111 U. S. 264 (4 Sup. Ct. 390, 28 L. ed. 423), Circuit Judge·Hook, in the case of Mutual Reserve Fund Life Ass'n v. Ferrenback, 144 Fed. 342, 346 (75 C. C. A. 304), said: "In the Lovell case, supra, Mr. Justice Bradley, in speaking of the complainant's claim, said: 'He demands a return of all the premiums paid by him, with interest, less the amount of his premium note; and that said note shall be delivered up to be cancelled. But we do not think that he is entitled to a return of the full amount of his premiums paid. He had the benefit of insurance upon his life for five years, and the value of that insurance should be deducted from the aggregate amount of his payments.' In some of the cases sustaining a recovery for all of the premiums paid, the Lovell case was distinguished and held inapplicable. Counsel also seek to distinguish it from the case at bar. But the fact remains that there was in that case a wrongful cancellation of the policy by the company, and the insured, as is the case here, regarded it as terminated, and sued for damages. We regard the doctrine there announced as precluding a recovery, for the wrongful cancellation of a policy, of that portion of the premiums paid which represents the actual cost of the insurance during the years of its uncontested validity. It is true that the policy there involved was of the level-premium character, but it is also true that that portion of the premiums paid by Lovell which was excluded by the Supreme Court from the recovery is precisely like all of the premiums paid by Lambert. Recovery of the part of the premiums representing the cost to the company of carrying the risk was denied Lovell, because he had received the benefit thereof. If the contention now made is admitted, this anomalous result will ensue: If an insured has paid, as Lambert did, premiums representing only the actual cost of the insurance, he may, upon wrongful cancellation of his policy, recover all of the premiums so paid; but if the premiums included, as in the Lovell case, an excess over actual cost, he can recover only such excess."

Learned counsel for the plaintiff insist that the question as to whether or not he is entitled to recover in the instant case is settled by the principle announced by the Supreme Court of Georgia in the case of the *Supreme Council American Legion of Honor* v. *Jordan,* 117 *Ga.* 808 (45 S. E. 33). We can not agree with this contention. In that case "a certificate issued by a benefit society

provided that 'in consideration of the full compliance with all the by-laws' of the society, then existing or thereafter adopted, the society 'agrees to pay' certain named beneficiaries five thousand dollars, upon satisfactory proof of death while in good standing of the person insured. Subsequently to the date of the certificate a by-law was adopted providing that two thousand dollars should be the highest amount paid on any benefit certificate theretofore or thereafter issued." The Supreme Court held: "(1) That the agreement to pay five thousand dollars was a contract which could not be changed by a by-law so as to reduce the amount agreed to be paid. (2) That the passage of such a by-law and an attempt to enforce the same by tendering to the insured a certificate for two thousand dollars amounted to a repudiation of the contract, and gave the holder of the certificate the right, at his option, to bring an action against the society for the recovery of the amount paid as premiums, with interest thereon from the time each was paid." Mr. Justice Fish, in the opinion, said: "There is, in the portion of the certificate quoted, an absolute promise by the society to pay five thousand dollars, no more, no less, upon satisfactory proof of the death of Jordan, on one condition only, and that is, a full compliance by him with all the provisions of the by-laws then existing or thereafter enacted. The promise, so far as the amount is concerned, is unconditional. There is nothing in the stipulation which indicates that the amount to be paid is dependent upon anything in a by-law. The amount is fixed, and whether it shall be paid depends only upon compliance with the by-laws and the conditions mentioned in the certificate. Giving the provision a reasonable interpretation and construing it with all of its intendments in favor of the certificate-holder, there can be no escape from the conclusion that it was not intended by this provision to authorize the society to reduce the amount agreed to be paid, but it was intended simply that payment of the amount agreed on was to be dependent upon compliance with the by-laws and the performance of the conditions named in the certificate." In the discussion of the *Jordan* case Mr. Justice Fish quoted approvingly from Becker *v.* Beneficial Society, 144 Pa. St. 232 (22 Atl. 699, 27 Am. St. R. 624), the following: "This was certainly an easy mode of relieving the society from an obligation; and if successful, will doubtless be followed by other similar associations. The difficulty

in the way of this convenient mode of paying debts is that it is repudiation pure and simple. The argument that the plaintiff, being a member of the society, is bound by the by-law, does not meet the difficulty. It may be a good by-law as to future cases, but at the time it was passed the plaintiff was something more than a member. He was a creditor whose rights had previously attached, and those rights can not be swept away by such a scheme as this by-law." It will be seen from the above that in the *Jordan* case the insurance company sought to render nugatory by a by-law the original and main contract, and this was properly designated as "repudiation pure and simple." As is stated above, the insurance company in the instant case has done nothing to show that it did not in good faith intend to carry out the main contract made with plaintiff.

Counsel for the plaintiff in error cite also the case of *Alabama Gold Life Insurance Co.* v. *Garmany, 74 Ga.* 51, as supporting their contention. In the *Garmany* case the company refused to allow the insured to pay his premiums and continue his insurance. This went to the very vitals of the main contract, and is an entirely different proposition from the one under consideration. There is absolutely nothing in the *Garmany* case in conflict with what is herein ruled. Indeed, our opinion in the instant case is supported by what is said in the *Garmany* case. Subdivisions "b" and "c" of the second headnote of the *Garmany* case are as follows: "(b) If an abatement of damages was proper on account of the intermediate benefits received by the assured, no proof of their value was introduced. (c) If the company violates the conditions and stipulations of its contract, it is liable to return to the assured at least as much as he would lose by his voluntary failure to keep on foot his policy by paying according to its terms." What would the plaintiff in the instant case "lose by his voluntary failure to keep on foot his policy by paying according to its terms?" This is provided for in the policy itself, in the following: "If the insured makes written application within six months after default in the payment of premiums, the company will extend this policy as a term policy for its full amount; or, upon surrender of this policy, will issue a participating paid up policy, or will pay the cash surrender value, as stated in the table on the third page hereof under the respective heads."

Thus it will be seen that from the contract itself, from an equit-able viewpoint, from the decisions, and from "the soundest rea-soning, which is the soundest law," the contention of the plaintiff in error is untenable, and that the court did not err in sustaining the demurrer to the petition.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*