## 26946.  EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *et al. v.* BRYANT.

DECIDED DECEMBER 2, 1938.  REHEARING DENIED DECEMBER 20, 1938.

*Heyman & Heyman,* for plaintiff in error.
*Robert G. Plunkett, R. F. Scarborough,* contra.

MACINTYRE, J.  Bryant filed suit alleging that on September 3, 1915, the Eminent Household of Columbian Woodmen, a fraternal benefit society, issued and delivered to him its whole-life beneficiary covenant, a copy being attached to the petition.  That at the time of the issuance of the policy the Eminent Household of Columbian Woodmen had a lodge and camp in Bibb County, Georgia, where the plaintiff lived.  That on July 7, 1921, the Eminent Household of Columbian Woodmen merged with the Woodmen of Mississippi, a fraternal benefit society chartered under the laws of Mississippi, and thereafter until September, 1926, said merged society operated under its Mississippi charter as a fraternal benefit society, with a constitution and by-laws, under the name, Columbian Mutual Life Assurance Society.  That on August 9, 1926, said Columbian Life

Assurance Society, in lawful convention and through its governing body, authorized and directed its president, secretary, and general counsel to file an amendment to its articles of incorporation, converting said society from a fraternal benefit society into a mutual life and disability insurance company. That under said resolution so adopted August 9, 1926, the inherent powers of the corporation were vested in the members thereof, and the control of its affairs was vested in a board of twenty-five directors. It was further provided in said resolution that "no rights, duties or obligations of members of the corporation, as determined by the certificates or covenants issued prior to the approval and filing of this amendment, or as determined by the constitution of the Columbian Mutual Life Assurance Society prior to said date shall be affected by this amendment to the articles of incorporation." That in accordance with said resolution the society was converted from a fraternal benefit society into a mutual life and disability insurance company, and has since that time operated as such under the name Columbian Mutual Life Insurance Company. That plaintiff has continued to pay all dues, assessments, and premiums, the times and amounts being set out in a schedule attached. That while plaintiff had fully complied with all requirements made of him, and while said policy was in force, the directors of the said Columbian Mutual Life Insurance Company, on March 16, 1937, by resolution, placed a lien against plaintiff's certificate in the sum of $259.32, said lien to bear interest from March 16, 1937, at the rate of five per cent., to be compounded annually, the principle and interest on said lien to be deducted from any claim or settlement under plaintiff's covenant. That the action of the board of directors in so placing said lien and reducing the amount payable on the certificate, being done without the knowledge or consent of plaintiff, was such a breach of a material, vital part of said contract as to entitle plaintiff to a return of all assessments paid thereunder. The amounts of the assessments and premiums paid being stated, and the total, together with the interest, being alleged as the measure of damages for the breach of said contract. A general demurrer was interposed by the defendant and a further demurrer filed because it was not alleged that the placing of said assessment against said policy by the board of directors was not within the powers of said board. The demurrers were overruled and the defendant excepted.

The original certificate, which is attached to the petition, contained the provision that "in consideration of the application for membership . . and the constitution and by-laws as they now exist or may be legally amended, all of which are expressly made a part of the agreement effected by this covenant," the sum of $1000 was to be paid to a named beneficiary.

"According to several decisions by the courts of this State and many decisions in other jurisdictions, in an action against an insurance company for an alleged breach by the insurer of its contract to keep in force a policy of life insurance according to the terms of its agreement, the plaintiff may elect to recover as his measure of damages the amount of the premiums paid, with interest on each payment from the time it was made, although such measure of recovery is in reality more appropriate to an action based upon a rescission." *Bankers Health & Life Ins. Co.* v. *James,* 177 *Ga.* 520 (170 S. E. 357). If the present suit be construed as an action against the defendant as a mutual life insurance company, it is clear that a cause of action is set forth, for it is alleged that the insurer, although it was obligated to pay to the beneficiary the sum of $1000, notified the insured that it was reducing the amount so to be paid in the sum of $259.32, and each year thereafter the additional sum of five per cent. of said amount was to be deducted. Under the decision in *Supreme Council* v. *Jordan,* 117 *Ga.* 808 (45 S. E. 33), this constituted such a breach as would authorize a recovery of the premiums paid, together with interest thereon. It is immaterial that the society issuing the policy sued on has been taken over by or changed into an ordinary life-insurance company. An insurance company taking over the business of a benefit association is entitled to any defense that would have been available to the original insurer. 8 Couch Ins. Law, § 2283; *Lindsey* v. *Independent Order of Puritans,* 23 *Ga. App.* 323 (98 S. E. 252). We think, under the decision in the *Jordan* case, supra, a cause of action was set forth. It was expressly alleged that the act of the insurer was a breach of the contract and this is sufficient.

There is in the policy an absolute promise to pay a stated sum, to wit, $1000, "no more no less," upon proofs of death "on one condition only and that is a full compliance by him with all provisions of the by-laws then existing or thereafter enacted." The promise, so far as the amount is concerned, is unconditional. There is

nothing in the stipulation which indicates that the amount to be paid is dependent upon anything in a by-law. The same language may be applied to the allegations contained in the present petition. A reduction in the amount to be paid under the terms of the policy, without the consent of the insured, is a breach of the contract amounting to a repudiation. In the *Jordan* case, supra, the court was considering "an effort made by a benefit society to reduce by a by-law the amount of a certificate theretofore issued," and on page 812 the following statement appears: "The enactment of the by-law and the attempt to enforce it against holders of certificates theretofore issued which provided for the payment of a sum exceeding two thousand dollars amounted to a repudiation of the contract and gave to the holder of such a certificate the right to either tender the amount of assessments as they became due, and await the maturity of the certificate and then try the question as to the right of the society to make the change, or to apply to a court of equity to have the certificate continued in force, or to treat the action of the society as a rescission of the contract and bring suit to recover the amounts which had been paid in as assessments during the continuance of the certificate, with interest on each from the time it was paid."

If, as alleged in the petition, the defendant insurer, without authority, changed the amount to be paid under the policy, such an act constituted an abrogation of the contract as originally made, because it substituted another and different contract, and amounted to a repudiation of the original contract. As was said in the case of *Farrow* v. *State Mutual Life Ins. Co.*, 22 *Ga. App.* 540, 543 (96 S. E. 446), "The insurance company in the instant case agrees to pay to the estate of the insured $1000 'immediately upon receipt and approval of proofs of death' of the insured. *This is the main, the principal, the prime contract.* All other conditions and stipulations are secondary and subordinate." (Italics ours.) A breach of secondary or subordinate conditions does not ordinarily amount to a repudiation of the contract so as to allow a suit for the recovery of the premiums paid. "Where a risk once attaches under a valid policy, premiums paid upon it during its continuance can not be recovered back as for money had and received." *Farrow* case, supra, 546. The allegations in the present petition, in effect, that the act of the board, in authorizing a lien on the policy

which decreased the face value of the policy and will continue to decrease it each year, breached the contract, is in effect an allegation that such act was unauthorized, and distinguishes this case from the case of *Columbian Life Ins. Co.* v. *Carter,* 58 *Ga. App.* 150 (197 S. E. 925).

The placing of a lien against said policy, the effect of which was to greatly decrease the amount to be paid at the maturity of the policy, was in effect a modification of the prime or principal element of the contract, to wit, the amount to be paid. It is alleged that the action was taken without the consent of the insured. There was no increased assessment levied in order to keep the policy or certificate in force, but the amount to be paid was arbitrarily reduced. In *Sealy* v. *Sovereign Camp Woodmen of the World,* 27 *Ga. App.* 14 (107 S. E. 417), it was held that a fraternal beneficiary society "has the right to levy such dues and assessments as may be necessary to pay all matured claims in full and to provide for the creation and maintenance of the funds required by its constitution and by-laws. . ." The levying of such dues or assessments does not create a breach of the contract. The reduction of benefits originally assumed, without the consent of the insured, is a repudiation of the contract. Under the law of this State, a fraternal benefit society, where it is given such power by its contract, may, as in the *Sealy* case, supra, increase its assessments. It may not reduce the benefits originally contracted for without the consent of the insured. See in this connection, *Eminent Household of Columbian Woodmen* v. *Eppes,* 24 *Ga. App.* 762 (102 S. E. 174). We think this distinction is clearly apparent in the case of *Pipkin* v. *Order of Railway Conductors,* 176 *Ga.* 809 (169 S. E. 26). In that case, Pipkin's certificate, issued in 1896, had a face value of $3000, and provided further that if he should remain in good standing until he became seventy years of age, the certificate should become fully paid-up and non-assessable for any purpose whatever. After Pipkin became seventy years of age, he was notified that "it was found impossible to continue granting relief from payment of assessments after age of seventy," and that it would be necessary for him to elect whether he would continue to pay assessments on the certificate, or take a paid-up certificate for a greatly reduced amount. He alleged that this conduct constituted such a breach as entitled him to sue for a return of the assessments paid on the

policy. It will be noted that he was required by the company to continue his assessments, and was also given an option to have the amount to be paid on his certificate at maturity decreased if he refused to pay further. The effect of the ruling in that case was that the demand for continued assessments did not constitute a repudiation of the contract, and therefore an action for the recovery of the payments theretofore made would not lie. On page 811 the opinion of the trial judge when sustaining the demurrer is quoted with apparent approval: "If the contract is still executory, it would appear that the defendant has the legal right to do what it is alleged it has attempted to do. If the contract has been fully executed, payment at the time provided is all that remains to be done, and a demand for further dues would not constitute a breach of contract." In the present case it is alleged that the insurer has arbitrarily decreased the main thing to be done under the contract, to wit: the payment of $1000 at the death of the insured. It does not appear that such demand was made in the shape of an option as in the *Pipkin* case, nor does it appear that the insured was ever required to pay increased assessments in order to prevent a reduction in the face value of his policy.

Such conduct as is alleged in the present petition constituted a repudiation of the contract and entitled the insured to bring his action to recover the assessments and dues already paid. The court did not err in overruling the demurrers.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. We did not mean to be understood as holding that where the insurance company authorized a lien on the policy in favor of itself that this ipso facto amounted to a reduction in the face amount of the policy and was a repudiation of the contract. What we held was that the placing of the lien on the policy was a circumstance which, along with other circumstances, might show a transaction or scheme which was in truth and in fact a reduction of the face amount of the policy, and that the insured, under such a scheme, had no option as to paying a larger assessment, premium, etc., but that he was confronted with the proposition that in no event could he recover the full face amount of the policy. If such should be the proof, the company repudiated the main, principal, prime contract of insurance.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*