28021, 28022.   EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *et al. v.* BRYANT; and *vice versa.*

DECIDED MARCH 14, 1940.   REHEARING DENIED MARCH 30, 1940.

*Heyman & Heyman, Scott Fitzhugh,* for plaintiff in error.
*Robert G. Plunkett, R. F. Scarborough,* contra.

GUERRY, J. This is a suit for recovery of assessments paid, because of alleged breach of contract. For a statement of facts, except such as may hereafter be included in this opinion, reference is made to this case when it was formerly before this court. *Eminent Household of Columbian Woodmen* v. *Bryant,* 59 *Ga. App.* 283 (200 S. E. 321). It will be noted that a citizen of Georgia had issued to him a fraternal benefit policy by the predecessors of the present defendant, in the year 1915. Subsequently this fraternal benefit company was merged with a company chartered in the State of Mississippi. The defendant, in addition to its answer, filed a plea of res judicata, in which it set up that in 1922 the company moved its executive offices from Atlanta, Georgia, to Memphis, Tennessee, and that in 1937 its governing body passed a resolution which recited various facts in reference to its investments and the decrease in value thereof, and said: "Whereas, in order to enable the company to continue to operate in a successful manner and serve the purpose for which it was organized, the insurance commissioner of the State of Mississippi has found, and so ordered, that an assessment shall be made and a lien placed therefor on and against all covenants issued by the fraternal benefit societies, to wit, Eminent Household of Columbian Woodmen, Columbian Woodmen of Mississippi, and Columbian Mutual Life Assurance Society, prior to the date of the conversion into the present mutual company, which occurred August, 1926." It was further provided that such lien should bear interest at the rate of five per cent., compounded annually. After the passage of the resolution fixing liens against all policyholders a bill in equity was brought in Shelby County, Tennessee, which had jurisdiction of the company by reason of the location of its principal offices in that county, "seeking to have assessment declared illegal, void, and of no effect, and as not binding on the holders of the said insurance covenants, and also seeking injunction, receiver, and liquidation of the defendant company." It was alleged that such bill was a class bill; that the judgment thereon bound the plaintiff in the present action in this State, although he was not a party thereto; and that such pro-

ceedings adjudicated all the issues which have been made under the present action. The Tennessee court expressly held that the parties to that suit were not proper parties to apply for a receivership, looking to a liquidation of the affairs of the company. Defendants further pleaded that the present plaintiff is bound by the decision of the Tennessee court, because of the provision of the full faith and credit clause of the United States constitution.

It will be noted that Mississippi is the State where this defendant is incorporated. Under article 4, section 1, of the constitution of the United States (Code, § 1-401), "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." The plaintiff in the present action was not a party to the pleaded proceedings in the State of Tennessee. The defendant company claims that the plaintiff was bound by such judgment, because he was a member of a class whose rights were adjudicated and determined thereby, because of the provision of the Code, § 37-1002, that "Members of a numerous class may be represented by a few of the class in litigation which affects the interest of all." As a condition precedent for the application of the full faith and credit provision of the United States constitution to be applicable to the members of a class who may be affected by the judicial proceedings of another State, it must appear that such court had jurisdiction to bind the members of the class wherever located. There have been a number of decisions of the United States Supreme Court affecting fraternal benefit societies; and it has been universally held that a decision by a court having jurisdiction in the *State where the society or company is incorporated,* respecting matters of interpretation of its charter or contracts, is binding on members similarly situated in other States. In Hartford Life Insurance Co. *v.* Ibs, 237 U. S. 662 (35 Sup. Ct. 692, 59 L. ed. 1165, L. R. A. 1916A, 765), it was held that a decree of a court of the home State of a life-insurance company issuing benefit certificates on the assessment plan, by which it is adjudged, in a suit brought against the company by a number of certificate-holders for the benefit of all, that the company had the right to make advances from its mortuary fund to pay death claims, and to replenish the fund by collections from a subsequent assessment upon its members is valid and enforceable against a beneficiary who was not a party to such decree proceedings and was

a resident of another State. The defendant company there was chartered in Connecticut, and the decree determining its rights to make assessments was made by the courts of Connecticut. The court in Minnesota refused to allow evidence of such proceedings to be introduced there, and this ruling was held a violation of the full faith and credit clause of the constitution. Justice Lamar, who wrote the opinion, said the sole question was to determine "whether the Connecticut court had jurisdiction to enter a decree binding on a beneficiary who was not a party to the proceeding." He said: "Manifestly the question as to the ownership and proper administration of the fund could not be left at large for collateral decision in every suit on certificates held by those who had failed to pay the assessment;" and that the courts of Connecticut "had jurisdiction of all questions relating to the internal management of the corporation." Selig v. Hamilton, 234 U. S. 652 (34 Sup. Ct. 926, 58 L. ed. 1518, Ann. Cas. 1917A, 104) ; Mutual Life Insurance Co. v. Harris, 97 U. S. 331 (24 L. ed. 959) ; Condon v. Mutual Reserve Fund Life Asso., 89 Md. 99 (44 L. R. A. 149, 42 Atl. 944, 73 Am. St. R. 169). We quote further from the same opinion: "It was for the court of the State where the company was chartered and where the fund was maintained to say what was the character of the members' interest."

In Supreme Council Royal Arcanum v. Green, 237 U. S. 531, 542 (35 Sup. Ct. 724, 59 L. ed. 1089, L. R. A. 1916A, 771), it was said: "Moreover, as the charter was a Massachusetts charter, and the constitution and by-laws were a part thereof, adopted in Massachusetts, having no other sanction than the laws of that State, it follows by the same token that those laws were integrally and necessarily the criterion to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws." Discussing the case further, Chief Justice White said that, in order to prevent different and divergent opinions in respect to the same rights involved as between members of fraternal benefit societies and the societies, courts of last resort of so many States have been led, "in passing on questions involving the general authority of fraternal associations and their duties as to subjects of a general character concerning all their members, to recognize the charter of the corporation and the laws of the State under which it was granted, as the test and measure to be applied." A number of de-

cisions are there cited, sustaining this statement. Justice Holmes, in Modern Woodmen of America v. Mixer, 267 U. S. 544 (45 Sup. Ct. 389, 69 L. ed. 783; 41 A. L. R. 1384), said: "The indivisible unity between the members of a corporation of this kind, in respect of the fund from which their rights are to be enforced, and the consequence that their rights must be determined by a single law, is elaborated in Supreme Council R. A. v. Green, 237 U. S. 531, 542. . . The act of becoming a member is something more than a contract—it is entering into a complex and abiding relation— and as marriage looks to domicile, membership looks to and must be governed by the *law of the State granting the incorporation.*" (Italics ours.) See also Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356 (41 Sup. Ct. 338, 65 L. ed. 673); Sovereign Camp v. Bolin, 305 U. S. 66 (59 Sup. Ct. 35, 83 L. ed. 45, 119 A. L. R. 478). In the Mixer case, supra, the beneficiary in a fraternal certificate issued by a society incorporated in Illinois brought suit in Nebraska, alleging that the insured had been gone and not heard of in ten years before the suit was brought, and therefore that liability existed. The certificate contained a provision that "long-continued absence of any member unheard of shall not . . give any right to recover on any benefit certificate, until the full term of the member's expectancy of life, according to the National Fraternal Congress table of mortality has expired," "and this law shall be in full force and effect, any statute of any State or country or rule of common law of any State or country to the contrary notwithstanding." The Supreme Court of Nebraska affirmed a recovery, although it was shown that the life expectancy of the insured had not expired. This by-law was shown to have been held valid by the courts of Illinois, and the Supreme Court of the United States reversed the judgment of the Nebraska court, under the principles above cited. Indeed it is fundamental, and so recognized by the courts of this State, that the validity and obligation of a contract is a matter to be governed by the lex loci contractus. In construing the powers granted to this defendant we must look to its charter and the laws of the State under which it was granted. The fact that its principal offices may have been in Tennessee did not take away from the courts in Mississippi the right to construe and decide questions concerning its charter, by-laws, and constitution. Until this has been done the decision of no State other than

Mississippi is entitled to be given full faith and credit in courts of this State, as against a party who was not a party to such action in such other State. For this reason we think the court below was correct in sustaining the demurrer to the plea of res judicata.

The question left for determination by a judgment was whether the action of the company in placing against the policy a lien which automatically reduced the amount of the policy each year it continued in force amounted to a change of the terms of the prime conditions of the contract. It was shown by the evidence that the company notified the plaintiff that it had placed against his covenant, which was for one thousand dollars, an "assessment lien amounting to $259.32, which will bear interest at the rate of five per cent." "In the event of your death the amount of any assessment lien then existing against your covenant would be deducted from its face value." In the former appearance of this case in this court it was held that the petition alleged that the company had arbitrarily placed against a valid certificate issued by it to the plaintiff a lien which had the effect of reducing the amount to be paid upon maturity of such certificate, and might constitute such an act on the part of the company a breach of a material part of the policy or contract, and entitle the plaintiff to a return of the premiums theretofore paid, and therefore set out a cause of action. In that opinion we said that the placing of this lien in favor of itself did not ipso facto amount to such a reduction of the policy as to make it a repudiation of the policy, but was a circumstance to be considered, and was to be taken in connection with the other circumstances of the case. Under the agreed state of facts of this case, presented to the trial judge for his determination without the intervention of a jury, it was shown that this fraternal benefit company had become in unsound financial condition, because of investments made in securities which had greatly depreciated in value; and that unless an assessment was made against the holders of fraternal covenants, it would be necessary to liquidate the company. This finding was made by the insurance commissioner of Mississippi, the State where the company was chartered, and was concurred in by the commissioners of Tennessee and Alabama, where many of the members lived; and as a result of this finding, and by their own investigation, the governing and qualified directors of the company passed a resolution which set out in detail

the facts surrounding the financial involvement of the company and impairment of or deficiency in its required assets, and which recited that "whereas the funds now being collected from fraternal covenant holders are insufficient to pay the liabilities thereon, including mortuary and disability funds and expenses, and maintain a fund sufficient to meet accrued and future liabilities and reserves required to maintain the percentage of solvency provided by the laws of the State of Mississippi . . therefore be it resolved that there is hereby imposed as of March 16th, 1937, on each said covenant, in addition. to any existing indebtedness on such covenant, an assessment similar to a policy loan." Then followed a recital of conditions and terms of such assessment. As a consequence of such assessment the defendant company wrote to Bryant, the plaintiff, that because of a deficiency in the assets necessary to take care of claims, and acting under the advice of the commissioner of insurance for the State of Mississippi, this assessment against Bryant was ordered for a named and specified amount according to the needs of the situation. This notice further stated: "This lien shall be deducted from any claim or settlement under your covenant while it exists against it. *You may pay the lien* or interest on the lien in cash; or if you prefer not to pay the interest in cash, it will be added to the lien and increase the charge against your covenant. . . The amount of the assessment lien against your covenant as of March 16th, 1937, was $259.32. . . This assessment lien will bear interest at the rate of five per cent. per annum, which interest will be charged against the covenant unless it is paid in cash. In the event of your death the amount of any assessment lien then existing against your covenant would be deducted from its face value." It was also stipulated that, according to the judgment of the insurance commissioner above named, there was a deficiency in the assets of the company amounting to $1,800,000, which it was necessary to make good in order to preserve the solvency of the company. It was stipulated in the agreement of facts that Bryant paid all assessments, dues, and premiums levied against him up until March 16, 1937, and that he was at that time in good standing.

The authority of the board of directors who passed the resolutions creating the so-called "assessment lien" was shown without dispute. It will be seen that the company became unable to pay

its matured death and disability claims in full, and to maintain its required funds. This fact was undisputed. The action taken by the directors was upon the recommendation of the insurance commissioner of the State of its incorporation, as well as other States, after a full investigation. The directors were empowered to act in such capacity under the constitution and by-laws of the company, which were in evidence. These by-laws complied with the following provisions of the Code, § 56-1626: "The laws of such society shall provide that if the stated periodical contributions of the members are insufficient to pay all matured death and disability claims in full, and to provide for the creation and maintenance of the funds required by its laws, additional, increased, or extra rates of contribution shall be collected from the members to meet such deficiency; and such laws may provide that, upon the written application or consent of the member, his certificate may be charged with its proportion of any deficiency disclosed by valuation, with interest not exceeding five per centum per annum."

In the former opinion in this case we quoted approvingly the language in *Sealy* v. *Sovereign Camp Woodmen of the World*, 27 *Ga. App.* 14 (107 S. E. 417), which is to the same effect as the Code section just quoted; and we here say that the levying of such dues or assessments does not create a breach of the contract of insurance. As to the right to make such levies of assessments see 3 Couch's Cyc. Ins. Law, § 595a. Under the agreed state of facts no question is raised as to the necessity for the assessment or the authority of the directors to make the same. The petition alleged that the defendant had arbitrarily decreased the face value of the policy. The evidence showed that a legal assessment was made against the covenant. The insured was given the right to pay this assessment in cash, or in lieu thereof to have it charged against his policy. While it is true that he gave no written consent that it be charged against his policy, it became an unpaid assessment against him. The fact that he was notified that it would be charged against his policy in the event he failed to pay it in cash, and would thus constitute a lien on the policy, did not, under the facts disclosed, constitute such action an arbitrary reduction of the face amount of the policy, and thus give rise to a right to recover premiums and assessments paid. The defendant, as appears from the record, legally levied an assessment. The plaintiff was notified and

given an opportunity to pay this assessment. It at least became a debt due by the plaintiff to the defendant. The fact that credit was offered to him, whereby the amount of the assessment would be carried as a loan, to be paid by a deduction from the face of the policy when it became due, did not constitute a breach of the contract, and did not warrant a recovery of the premiums paid. The court erred in finding for the plaintiff. There was no evidence authorizing a recovery. In his brief counsel admits the right of the defendant to levy additional assessments, but states that it was arbitrarily charged against the policy without giving Bryant the option to pay the sum levied. The evidence shows that he was given the option to pay the assessment, which he failed to do or to offer to do. The subsequent offer of the defendant to carry the assessment as a lien did not breach the contract. It is also contended, in view of the fact the plaintiff in error came to court on a direct bill of exceptions in which it assigns error on the finding of the judge who passed on the evidence without the intervention of a jury, that this court is without authority to pass on the sufficiency of the evidence to support the judgment. We may say in reply to this that there is no evidence which would warrant a judgment for the plaintiff. The Supreme Court, in *Crumbley* v. *Brook*, 135 *Ga.* 723 (70 S. E. 655) said: "Where a case is submitted on both law and facts to the presiding judge without the intervention of a jury, a party dissatisfied with the decision may make a motion for a new trial, or may bring the case to this court by direct bill of exceptions. If he pursues the latter course, the writ of error will not be dismissed on the ground that a motion for a new trial should have been made." See *Chance* v. *Simpkins*, 146 *Ga.* 519 (91 S. E. 773); *Martin* v. *Ware*, 179 *Ga.* 733 (177 S. E. 565). The question presented in the exception here taken was whether, as a matter of law, the evidence authorized the finding of the judge. We hold the assignments of error sufficient to present the matter for our consideration.

Under the view we take of this case there was no merit in the plaintiff's demurrers to the defendant's answer.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Broyles, C. J., and MacIntyre, J., concur.*